JAMES MURPHY, Jr., as Administrator, etc., Respondent, v.
THE CITY OF BROOKLYN, Appellant.

*It seems* the rule that one who causes an excavation on his own land so near a highway that a traveler thereon, without fault of his, falls into the hole and is injured, may be held liable for the damages, does not apply to an excavation on private property near high-water mark on the sea shore. (EARL, RAPALLO and ANDREWS, JJ., concurring.)

*It seems* also, the sea shore is not a highway for public travel, on foot or in vehicles ; and while any one may, unless the public authorities by lawful action interfere, go thereon between high and low-water mark for any lawful purpose, he must use it as he finds it, and can look to no one for damages sustained from any defect therein. (EARL, RAPALLO and ANDREWS, JJ., concurring.)

(Argued February 9, 1885 ; decided March 3, 1885.)

*John A. Taylor* for appellant.

*Jesse Johnson* for respondent.

The following is the opinion in this case, in full :

" In the years 1869 and 1870 the board of water and sewerage commissioners of the city of Brooklyn caused a sewer to be constructed through Third avenue in that city. The original plan was to construct the sewer through the avenue to Forty-ninth street, and to have its discharge at that point. But when the sewer had been constructed to Twenty-eighth street it was there turned northwardly, at right angles with the avenue, and carried out into Gowanus bay several hundred feet, through a wooden box, and there had its discharge. On the northerly side of the avenue there were houses and fences, and about fifty feet from the side of the avenue near the box there was a hole with water and some sewage therein ; and in July, 1882, the plaintiff's intestate, a boy nearly six years old, was drowned in that hole. No one saw how he got into the

hole, and how he got into it is left to conjecture. The plaintiff, claiming that this hole was carelessly permitted to remain there and to be covered with sewage, brought this action to recover damages for the death of the boy; and he recovered a judgment, from which the city appealed to the General Term, and from affirmance there to this court.

"The hole was above high-water mark, on private property, and precisely how it was caused is not disclosed in the evidence. It may be inferred that it was caused in some way in the construction of the sewer-box, or through its operation. There is some evidence tending to show that by the action of the tides the sewage was driven back in the box, and forced out of its sides through some defects therein, and that the hole may have been thus caused by the action of the tide and sewage.

"The plaintiff could not recover on the theory that the sewer-box was wrongfully constructed from the avenue out into the bay without the authority of law. It was not alleged in the complaint that the box was wrongfully placed there, and the case was not submitted to the jury upon that theory. The construction of the box was not wrongful as to the intestate, and as to him it was not a nuisance. It did not invade his property or his personal rights. We must assume that it was constructed with the consent of the owner through the private property, and that the State has made no objection to its construction into the bay, over the land under water which may be presumed to belong to it.

The only other theory upon which the city could be held liable is that of negligence, and that is the theory of the complaint and upon which the case was submitted to the jury. Of what negligence, then, was the city guilty as to the intestate of which the plaintiff can legally complain in this action? The city could not be charged with negligence for causing and permitting this hole at least fifty feet from the avenue on private property with the consent of the owner. One who causes a dangerous excavation on his own land so near a highway that a traveler thereon without any fault of his falls therein and is thus injured may be liable for damages, and there are many

cases to be found in the books where damages have been awarded on account of such negligence. Liability in such case is imposed, because slight deviations from the highway by a traveler are sometimes inevitable, and he should not carelessly be exposed to excavations so near the highway that he may accidentally fall therein. But this rule of liability cannot apply to the case of an excavation at least fifty feet from the highway into which no traveler thereon could by any accident or mistake be precipitated.

But the claim is made that the intestate had the right to be and travel upon the shore of the bay between high and low-water mark, and hence that the city should be held liable for causing and permitting this hole so near to high-water mark that the intestate, while exercising his lawful rights, accidentally fell therein. But the sea shore is not a highway for public travel upon foot or with vehicles. It is a part of the ocean and that is a public highway for vessels. Every one can, however, unless the public authorities by lawful action interfere, go upon the sea shore between high and low-water mark to fish, to bathe, or for any other lawful purpose. But obviously he must use the shore as he finds it, and he can look to no one for any damages he sustains there from any defects therein. But certainly the rule above stated applicable to holes near highways does not apply to the case of a hole on private property near high-water mark on the sea shore, because persons are not expected to be there for the purpose of travel, and it is not prepared or kept safe for that purpose. So far as we can perceive, the city did not owe the intestate any duty to fill the hole up to protect him against the same.

But in any event the city cannot be under a greater liability than it would have been for a hole in one of its streets, and in that event it could not have been made liable for the consequences of a hole, until it had had some notice of its existence and time sufficient to fill it up or guard it. Here there was no proof as to how long this hole had existed, and none whatever that the authorized agents of the city knew of its existence. We may assume that the hole was caused in some way by the action of the tides upon the sewer box and the sewage therein,

and the city could not be charged with negligence for leaving the hole there until it knew it was there and had time to fill or guard it.

So, taking any view of this case, we cannot perceive that the city violated any duty it owed to the intestate, or that it was guilty of any negligence as to him, and we do not know of any theory upon which this recovery can be upheld.

The judgment should be reversed and new trial granted, costs to abide event."

*John A. Taylor* for appellant.

*Jesse Johnson* for respondent.

EARL, J., reads for reversal and new trial; RAPALLO and ANDREWS, JJ., concur; RUGER, Ch. J., MILLER and DANFORTH, JJ., concur on last ground stated in opinion; FINCH, J., dissents.