HUMPHREY SISSON et al., Respondents, *v.* CECELIA CUMMINGS et al., Impleaded, etc., Appellants.

E., a married woman, died seized of a lot of land, the south-west line of which, as described in the deed under which she held was near to high-water mark of the St. Lawrence river. The deed contained a reservation (so called therein) of all the grantor's rights "to the land now under water and to the water front beyond or south-west" of the south-west line of the lot conveyed. E. died intestate, leaving her husband and two infant children her surviving. In an action of ejectment, brought by the survivors, to recover the premises embraced in the reservation, the answer of the infants denied any entry by them upon

or claim of title to any land except that of which their mother was seized at the time of her death, and no evidence was given tending to show possession of or assertion of title on their part to the premises in question; nor did it appear that their mother ever entered upon or claimed any right or interest in said premises. It did appear that after the death of E., her husband entered upon the said premises, erected structures thereon and tore down a wharf erected by plaintiffs. *Held,* that the infant defendants were improperly made parties; that their joinder as such was not justified by the Code of Civil Procedure (§ 1508), and the complaint should have been dismissed as to them; that they were not bound by the acts of their father, as these acts must be referred to his own interest and title as life tenant, not to the title of the remaindermen.

*Sisson* v. *Cummings* (35 Hun, 22) reversed.

(Argued April 27, 1887; decided June 7, 1887.)

APPEAL by defendants, Cecelia and James Cumming, from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 29, 1885, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury. (Reported below, 35 Hun, 22.)

This was an action of ejectment, to recover possession of a strip of land adjacent to and above low-water mark of the St. Lawrence river and lying south-west of and adjoining premises of the defendants.

The material facts are stated in the opinion.

*Wayland F. Ford* for appellants. The ebb or flow of the tide is not regarded as the test of navigability when applied to fresh water lakes, inland seas or the streams forming the boundary line of States. (*People ex rel. Loomis* v. *Canal Appraisers,* 33 N. Y. 461; *Canal Appraisers* v. *People,* 17 Wend. 598; *Browne* v. *Schofield,* 8 Barb. 243; *In re Genesee Chief,* 12 How. 454; *Barney* v. *Keokuk,* 94 U. S. 336; *Tomlin* v. *Dubuque R. R. Co.,* 32 Ia. 106; *Smith* v. *City of Rochester,* 92 N. Y. 479; *Mayor of Mobile* v. *Eslava,* 9 Porter [Ala.], 579; 33 Am. Dec. 325; *Collins* v. *Benbury,*

3 Ired. L. 722; *Colstein* v. *Blazier,* 2 Bin. 475; 4 Am. Dec. 463; *Buff. P. Line* v. *N. Y. & L. E. R. R. Co.,* 10 Abb. [N. C.] 107; *La Plaisance Bay Harbor Co.* v. *City of Monroe,* 1 Walker's Ch. [Mich.] 155; *Smith* v. *City of Rochester,* 92 N. Y. 579; *The King* v. *Montague,* 4 B. & C. 598; *Miles* v. *Rose,* 5 Taunt. 705; *Rex* v. *Smith,* 2 Doug. 411; *Warren* v. *Mathers,* 6 Mod. 73; *Carter* v. *Murcott,* 4 Burrow, 2162; *Mayor, etc.* v. *Turner,* Cooper, 86; Woolrych on Waters, 40 [marg.]; Gould on Waters, 137, § 68.) On navigable waters the riparian rights cannot extend beyond high-water mark. (*Town of Ravenswood* v. *Fleming,* 22 W. Va. 52; *Mayor, etc.* v. *Esclava,* 9 Port. [Ala.] 579; 33 Am. Dec. 325; *Gould* v. *Hudson R. R. Co.,* 6 N. Y. 522; *People* v. *Canal Appraisers,* 33 N. Y. 493.) In considering the public character of the river St. Lawrence, the fact that it is a national boundary between the State of New York and a foreign country is important in determining whether it is to be regarded as a public navigable river, with all the incidents attached to that character. (*Canal Appraisers* v. *People,* 17 Wend. 598, 599; *Kingman* v. *Sparrow,* 12 Barb. 201.) In ejectment the plaintiff must rely upon the strength of his own title, not upon the weakness of the defendants. (*Haldane & Urry* v. *Harvey,* 4 Burr. 2487; *Wallace* v. *Swinton,* 64 N. Y. 188.) There could be no recovery for lands between high and low-water mark without title. (*Gould* v. *H. R. R. R. Co.,* 6 N. Y. 522; *Lansing* v *Smith,* 4 Wend. 22; *People* v. *Mauran,* 15 Denio, 389; *Bennett* v. *Buchan,* 76 N. Y. 390; *Phelps* v. *Vischer,* 50 id. 69; *Thompkins* v. *Lee,* 59 id. 662.) An exception in a deed is always to be taken most favorably to the grantee. (*Jackson* v. *Gardner,* 8 Johns. 394; *Jackson* v. *Myers,* 3 id. 387; *Jackson* v. *Blodgett,* 16 id. 172; *Bowering* v. *Elmslie,* 7 T. R. 216, *n.*) To maintain the action of ejectment, it would be necessary to show defendants in possession exercising acts of ownership, or that they claimed the title. (*Redfield* v. *Utica & Syr. R. R. Co.,* 25 Barb. 54; *Abel* v. *Van Gelder,* 36 N. Y. 514; *Banyor* v. *Empie,* 5 Hill,

48; *Lucas* v. *Johnson,* 8 Barb. 244; Code of Civ. Pro., §§ 1502, 1503.) There exists the .same reason for limiting grants upon the St. Lawrence to high-water mark, as apply to other public waters. (*Halsey* v. *McCormick,* 13 N. Y. 298; *Murphy* v. *City of Brooklyn,* 98 id. 645; *Canal Appraisers* v. *People,* 17 Wend. 620, 621.)

*Denis O'Brien* for respondent. Ejectment will he for .and below high-water mark as well as for that above. (*Cham. & St. L. R. R. Co.* v. *Valentine,* 19 Barb. 484; *People* v. *Mauren,* 5 Denio, 389; *Nichols* v. *Lewis,* 15 Conn. 137.) The plaintiffs' right to recover is not affected by the fact that a portion of the land may be below high-water mark. (*Langdon* v. *Mayor, etc.,* 6 Abb. [N. C.] 314; *Bridge* v. *Pierson,* 45 N. Y. 601; *S. C.,* 66 Barb. 514; *Rexford* v. *Marquis,* 7 Lans. 249; *Salsburgh* v. *Hynds,* 13 Week. Dig. 359; *Jackson* v. *Vermilyea,* 6 Cow. 677; *Van Rensselaer* v. *Van Rensselaer,* 9 Johns. 377; 3 Wash. Real Prop. [4th ed.], 431–433, [book 3, chap. 5, § 457]; *Munn* v. *Worrall,* 53 N. Y. 44; *State* v. *Wilson,* 42 Me. 9; *Whittaker* v *Brown,* 46 Penn. St. 197; *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 290, 321.) Woodworth was estopped by his deed from claiming the strip of land in question. (*Van Rensselaer* v. *Kerney,* 11 How. [U. S.] 297; *Fitch* v. *Baldwin,* 17 Johns. 161; *Jackson* v. *Murray,* 7 id. 5; *Jackson* v. *Wilson,* 9 id. 92; *Brant* v. *Livermore,* 10 id. 358; *Sanford* v. *Roosa,* 12 id. 162; *Esterbrook* v. *Savage,* 21 Hun, 146; *Judd* v. *Seekins,* 62 N. Y. 266; *Bank of Troy* v. *Hibbard,* 45 How. Pr. 280; *Freeman* v. *Auld,* 44 N. Y. 50; *Ingraham* v. *Baldwin,* 9 id. 45, *Lee* v. *Clark,* 1 Hill, 56; *Fake* v. *Grant,* 39 Barb. 339; *Long Island R. R. Co.* v. *Conklin,* 29 N. Y. 572.) The defendants claiming under Woodworth are estopped by the provisions of his grant to the same extent that he would have been. (*Hill* v. *Hill,* 4 Barb. 419; *Stow* v. *Wyse,* 7 Conn. 214; *Chautauqua Co. B'k* v. *Risley,* 4 Denio, 480; *Demeyer* v. *Legg,* 18 Barb. 14; *West* v. *Pine,* 4 Wash. 691; *Carver* v. *Astor,* 4 Peters, 1; *Crane* v. *Morris,* 6 id. 598.) Riparian owners on fresh water

lakes and rivers where the tide does not ebb and flow, own to low-water mark, although the water be navigable in fact. (*Wheeler* v. *Spinola*, 54 N. Y. 377 ; *Canal Com'rs* v. *People*, 5 Wend. 423, 443-447 ; *Handley* v. *Lessee of Anthony*, 5 Wheat. 374 ; *Waterman* v. *Johnson*, 13 Pick. 261 ; *Cham. & St. L. R. R. Co.* v. *Valentine*, 19 Barb. 484 ; *Halsey* v. *McCormack*, 13 N. Y. 296 ; *Child* v. *Storr*, 4 Hill, 369 ; *Gould on Waters*, § 203 ; 3 Wash. on Real Prop. [4th ed.] 414, 416; *Angell on Water Courses*, § 42 ; *Hilliard on Real Prop.* 189-202, and notes ; *Ball* v. *Slack*, 2 Whar. 508 ; *Lehigh Valley R. R. Co.* v. *Trone*, 28 Penn. St. 206; *Bailey* v. *Miltonberger*, 31 id. 37 ; *Lessee of McCulloch* v. *Aten*, 2 Ohio, 307; *Lessee of Blanchard* v. *Porter*, 11 id. 138 ; 3 Kent's Com. 427; *Seneca Nat. of Indians* v. *Knight*, 23 N. Y. 498 ; *Yates* v. *Van De Bogert*, 56 id. 526 ; *People* v. *Canal Appraisers*, 33 id 464 ; *Palmer* v. *Mulligan*, 3 Caine's, 308, 318, 319 , *Smith* v. *City of Rochester*, 92 N. Y. 463, 486 , *Ex parte Jennings*, 6 Cowen, 518.) From the facts the courts could well have found that the plaintiff had title to the land under water by prescription. (Code of Civ. Pro., § 370 ; *Corning* v. *Troy Iron and Nail Factory*, 44 N. Y. 577 ; *Trustees of East Hampton* v. *Kirk*, 68 id. 459, 466 ; *Towle* v. *Remsen*, 70 id. 303.) The finding that plaintiffs were the owners of the land under water is consistent with a title by prescription as an adverse possession , for the statutory period establishes a perfect title, and to uphold it a grant will be presumed. (*Cahill* v. *Palmer*, 45 N. Y 479; *Jackson* v. *Wheat*, 18 John, 40 ; *Rubie* v. *Sedgwick*, 4 Abb. Dec. 73 ; *S. C.*, 35 Barb. 319 ; *Bogardus* v. *Trinity Church*, 4 Paige, 178.) The land under water of Otter creek recovered by plaintiffs, belonged to them subject to the rights of the public. The existance of a public easement did not deprive plaintiffs of the right to maintain ejectment against an individual ousting them from the use or possession. (83 N. Y. 178; 92 id. 484, 485 ; *East Haven* v. *Hemenway*, 7 Conn. 186, 203 ; *People* v. *Tibbitts*, 19 N. Y. 523, 528 ; *Blundell* v. *Cattarall*, 5 B. & A. 268 ; *Nichols* v. *Lewis*, 15 Conn. 137 :

*Jackson* v. *May*, 16 Johns. 184; *Jackson* v. *Buell*, 9 id. 298; *Brown* v. *Galley*, H. & D. 308; *Rowan* v. *Kelsey*, 18 Barb. 484; *Champ. & St. Lawrence R. R. Co.* v. *Valentine*, 19 id. 484; *People* v. *Mauren*, 5 Den. 389; *Thompkins* v. *Lee*, 59 N. Y. 662; *Phelps* v. *Vischer*, 50 id. 69; *Bennett* v. *Buchan*, 53 Barb. 578; Code of Civ. Pro., §§ 268, 272, 997, 1010, 1019, 1022, 1023.) The infants were properly made parties defendants, being the owners of the land, the title to the property in question could not be finally determined without their presence as parties, and it is now the policy of the law to have all the persons made parties that are necessary to a final determination of the questions involved. (Code of Civ. Pro. §§ 1502, 1503; *Stewart* v. *Parker*, 68 N. Y. 450, 455; *Martin* v. *Rector*, 30 Hun, 138.) It was proper to prove the manner the land between high and low-water mark had been used, not only as tending to establish title by prescription, but also the true boundary of the grant to plaintiffs; (*Duke of Beaufort* v. *Mayor, etc.*, 3 Exch. 413; *Rowe* v. *Brenton*, 3 M. & R. 329.) The owner of land on the St. Lawrence river takes at least to low-water mark. (*Lorman* v. *Benson*, 8 Mich. 18; *Jakeway* v. *Barrett*, 38 Vt. 316; *Fletcher* v. *Phelps*, 28 id. 257; *Austin* v. *Rutland R. R. Co.*, 45 id. 215; 19 Barb. 484; Gould on Waters, §§ 23, 203; *Rice* v. *Ruddiman*, 10 Mich. 125, 138; *Seaman* v. *Smith*, 24 Ill. 521; *Ld. Adv., etc.* v. *Ld. Blantyre* [4 App. Cas.], 33 Moak's Eng. R. 533; 3 Wash. R. Est. [4th ed.] 409; *Ledyard* v. *Ten Eyck*, 36 Barb. 125.) Whether the owner of land on the St. Lawrence river takes to high or low water mark is immaterial. (*Yates* v. *Milwaukee*, 10 Wall. 497; 31 Minn., 297; 47 Am. Rep., 789; 15 Conn., 137; 22 id. 181; 18 id. 391.) Ejectment will lie for a common appendant or appurtenant, when coupled with a suit for the lands to which it is appendant. (Tyler on Ejectment, 42; *Jackson* v. *Buell*, 9 John. 298.) The action may be maintained for a fishery. (*Rex* v. *Old Arlesford*, 1 Tr. Reps. 358; *Smith* v. *Burritt*, 1 Lev. 114; Cro. Jac., 1150; Runnington on Ejectment, 131.)

ANDREWS, J.   We deem it unnecessary to decide the inter-- esting question argued at the bar, respecting the construction of a grant by the State of lands bordering on the river St. Lawrence above the ebb and flow of the tide, which bounds the granted premises by the margin or shore of the river, and whether under such a description the title of the grantee extends to the margin of the water at its low stage, or only to high-water mark.   The judgment against the infant defendants, who are the only appellants here, must be reversed upon a preliminary question.   Assuming that the plantiffs' title under the Macomb patent extended to the line of low- water, and that they established title to the water front and to the land under water to low-water mark, lying south-west of and adjoining the premises embraced in the deed of July 5, 1861, from John W. Fuller to David and William Wood- worth, under which the defendants claim, we think neverthe- less the appellants were entitled to a dismissal of the complaint on the ground that it did not appear on the trial by the plead- ings or evidence that they were in possession of the demanded premises, or claimed title thereto as remaindermen or other- wise at or before the time of the commencement of the action.   Upon the death of Ellen Cumming, January 31, 1875, the title to the Woodworth lot descended to her two children, the infant defendants, subject to a life estate in Peter Cumming, the husband, as tenant by the courtesy. Ellen Cumming acquired title to the lot by deed from David Woodworth, November 10, 1871, which described the land by metes and bounds.   The south-west line was near to high water mark on said river, but the river was not referred to in the description.   By said deed the conveyance was made, subject to a reservation (so called) to Fuller (the original grantor of the Woodworths) contained in the original deed from Fuller to them, of "all his rights to the land now under water and to the water front beyond or south-west" of the south-west line of the lot conveyed.   She entered into possession under her deed from Woodworth, and occupied the lot and the house upon it with her husband and children

until her death. The premises in controversy are those embraced in this reservation. It neither appears that Ellen Cumming ever entered upon or that she claimed any right or interest in the premises in question. There is evidence that subsequent to her death Peter Cumming, her husband, one of the original defendants in the action, entered upon the premises in dispute and built a hog-pen and privy thereon, and tore down a wharf constructed by the plaintiffs between the lot conveyed to Ellen Cumming and the river. It may be admitted that enough was shown to entitle the plaintiffs to maintain ejectment against Peter Cumming. He has submitted to the judgment below and has not appealed, and his rights are not now in controversy. But the case discloses no ground upon which a judgment against the infant defendants can be supported. There is no pretense of any act on the part of the infants by way of assertion of title in themselves to the premises in question, nor is there any evidence that they have ever questioned or disputed the title of the plaintiffs. The complaint alleges that the defendants, after the death of Ellen Cumming, wrongfully entered into possession of the real estate described, and wrongfully withheld the same from the plaintiffs, and that the defendants, "*or some of them,*" claim to own the same, and deny the plaintiffs' title thereto. These allegations are not admitted by the infant defendants in the answer, but are denied, and they expressly aver that they have no interest in any lands except those of which their mother, Ellen Cumming, was seized at the time of her death, to wit, the lands embraced in the Woodworth deed, and they insist that the action cannot be maintained against them. It is clear, we think, that the infant defendants are not bound by the acts of their father, the tenant for life. It is true that both his rights and the rights of the infants in the land conveyed to Ellen Cumming are derived through her. But as we have said, the deed to Ellen Cumming carried no part of the premises in dispute, which lie wholly outside of the boundaries in the deed. The evidence also tends to show that Peter Cumming, in entering upon the land in controversy,

was asserting a supposed right as riparian owner to use the shore between high and low water mark adjacent to his land. But his acts must be referred to his own interest and title, and not to the title of the remaindermen. The infants could not control his conduct, and it would be grossly unjust to make them responsible for wrongs committed by him without their sanction or authority.

The joinder of the infant defendants is not justified by section 1503 of the Code. That section authorized any person claiming title to, or the right to the possession of real property sought to be recovered in an action as landlord, remainderman, reversioner or otherwise, adversely to the plaintiff, to be joined as defendant. The infants, so far as appears, neither claimed title to or the right to the possession of the land in controversy, nor did they do any act in hostility to the plaintiffs' title, and the complaint as to them should have been dismissed.

The judgment should be reversed as to the appellants and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.