DELINDA JOHNSON, Respondent, v. IVAR MAY, Appellant.

Second Department, November 7, 1919.

False imprisonment — malicious prosecution — probable cause —
trespasser on city lot refusing to leave on request — probable
cause not dependent on guilt or innocence — right to arrest —
waters — right of public in foreshore — rights of littoral owner —
rights of third person to erect temporary structure on foreshore.

Where a person is trespassing upon a lot or piece of land within the bounds of
a city or village and has erected thereon a tent supported by posts driven
into the ground and refuses to move off at the request of the owner, such
acts amount to a misdemeanor within section 2036 of the Penal Law and
constitute probable cause for arrest within the meaning of the law relating
to false imprisonment and malicious prosecution.

Probable cause for arrest does not depend upon the guilt or innocence of the
party arrested.

Where a person is trespassing upon the land of another within any city or
village and has erected a structure thereon without the owner's consent,
and refuses to leave the land upon request, the owner of the land has
power under section 183 of the Code of Criminal Procedure to arrest the
trespasser, if the acts stated occurred in his presence.

The right of the public in the foreshore of land bordering the ocean is to
pass and repass when the tide is out and to sail and fish over the foreshore
when the tide is in, and to make such other reasonable use thereof as
may be consistent with the rights of others.

A person does not have the right, as a matter of law, to erect and maintain a
temporary structure on the foreshore in front of the premises of another.
Such right depends on the surrounding conditions, that is, whether the
structure is an unreasonable use of the beach at the particular point in
question and whether it interferes with the rights of the public using the
beach for legitimate purposes.

The rights of the public and those of the littoral owner to the use of the
foreshore are not equal. The right of the littoral owner to access to and
from the sea is superior to the right of any member of the public to the
use of the foreshore. The right of access is incident to the ownership of
the upland, and exists without reference to whether the littoral owner has
any grant from the State of the land under water.

In an action for false imprisonment and malicious prosecution based on the
arrest of the plaintiff while trespassing upon the foreshore of land owned
by the defendant, a charge by the court that the plaintiff had a right,
as a matter of law, to be upon said foreshore and to erect a temporary
structure thereon is erroneous and calls for a reversal of the judgment
in favor of the plaintiff.

APPEAL by the defendant, Ivar May, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Richmond on the 13th day of February, 1919, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the 10th day of February, 1919, denying defendant's motion for a new trial made upon the minutes.

*Joseph V. Mitchell,* for the appellant.

*Joseph B. Handy,* for the respondent.

KELLY, J.:

The complaint contains two causes of action, the first for an alleged false imprisonment of the plaintiff by defendant on August 6, 1918, and the second for malicious prosecution based upon the same transaction. It appears that the defendant is the owner of certain premises in the city of New York, at South Beach, Staten Island, on the shore of the lower bay, his title extending to high-water mark. There is no survey or map printed with the papers. The defendant's title deed apparently conveyed to him the fee down to high-water mark, with all the rights of his grantor in the land below or outside high-water mark; there is a reference in one of his deeds to a grant of land under water from the People of the State of New York to one McRoberts, and it is recited that the property was conveyed to defendant by persons named McRoberts, but whether defendant had any record title to the land fronting his premises below high-water mark is not disclosed upon the record here. His property has a frontage of 638 feet on the shore, and is occupied by a hotel, dance hall, bathhouses and a number of summer cottages. On the day in question the plaintiff, who resided in a bungalow in the neighborhood but not on defendant's land, went to the beach with a woman friend and three children. They erected a shelter or tent by driving posts into the sand, to which they fastened umbrellas and between the umbrellas spread a blanket. The two ladies and the children were in bathing suits, it was a warm summer day, and their purpose in locating where they did was to go in bathing and to camp out under the shelter. There was a conflict between the parties as to

the location of the structure or shelter, the defendant claiming that the plaintiff and her companions went on his upland and some seventy feet inside the high-water mark, while the plaintiff's evidence was that she was between high and low-water mark. There was no dispute, however, that they were in front of the buildings, board walk and bathhouses erected on defendant's premises, and on a line between the bathing posts from which lines ran out into the water, maintained by the defendant for the use of his patrons. The plaintiff testifies that at about half-past ten in the morning the defendant came up to her and objected to her erecting her shelter or tent, telling her she must move down ·to some other location. She refused, and defendant asked her if she wanted him to call an officer, to which she replied: " Yes, if you get an officer and tell us to move we will move." The defendant walked away but came back a second time and threatened plaintiff with arrest, to which she replied that " if I was arrested this time it would be the first time that I had ever been arrested, but that I couldn't say so much for 'him." The defendant came back a third time, and plaintiff says he demanded " In the name of the law " that she go with him to the police station. Plaintiff refused unless a police officer took her, and defendant went away, returning for the fourth time with a policeman who put her under arrest and took her to the station house. The policeman asked what the ·charge was, and defendant said that the party refused to move from his premises. She says " that was the only charge that he made against me, that I refused to move from the premises." Plaintiff and her party were taken to the bungalow where she changed her clothing and from there to the police station. From the police station they were taken to the Magistrate's Court, where, she says, she was charged with disorderly conduct. The complaint or information is not in the record. The policeman, called as a witness for plaintiff, said that the defendant complained to him that the parties had erected a tent in front of his place and that they had used abusive language and struck his wife with an umbrella. He further testified that he accompanied May to the tent, and plaintiff said that " Mr. May come up and ordered us away from the beach, and we told him that we wouldn't move

away, until he got an officer and he would tell us to move," and plaintiff said that defendant had put them under arrest in the name of the law. The officer says that he asked defendant if he had placed the two women under arrest; he said " Yes;" " I said, ' What do you want me to do?' ' I want you to take them to the station-house.' ' All right.' " The defendant, examined as a witness on his own behalf, testified that he complained to the magistrate that plaintiff was on his property and refused to move, exhibiting his deed. The plaintiff says that at the hearing in the Magistrate's Court the case was dismissed, and that the magistrate did not call her to the stand. The proceedings before the magistrate are not in the record.

The learned trial judge charged the jury that if the plaintiff and her companions were above high-water mark, they were on defendant's premises and he had a right to eject them, using force if necessary. He instructed them that if plaintiff was a trespasser upon defendant's property she was guilty of a misdemeanor, and if the crime was committed in the presence of the defendant or the police officer the arrest was lawful. But he said to them that the plaintiff contended that she was at a point on the beach between high and low-water mark, and continued, " If that be the fact, as established by the testimony, then the defendant would have no greater rights or any greater privileges at the point where this took place than would the plaintiff. The rights of the plaintiff and defendant would be equal at any point on the beach front between high and low-water mark. All have equal rights on the beach front between high and low-water mark. The public own the land between high and low-water mark, and their rights cannot be alienated. So, if she was between high and low-water mark with her umbrella, her blanket and the other things that were there, she had just as much right to be there as did Mr. May, and Mr. May had no right to put her off of those premises. Her rights were equal to his, and any one of you would have the same rights, as any other person on the beach front between high and low-water mark." Later on, the learned trial judge said to the jury: " The plaintiff contends the property on which she was arrested was the land between high and low-water mark; if she has

established that she had a right to be there and she had the right to pass and repass, as did any other person at that point."

At the close of the charge the counsel for plaintiff requested the court to charge as follows: " May I ask your Honor to charge that if the jury finds that the plaintiff was upon the fore-land above high-water mark to which the defendant had title as owner in fee, that even if she was there without his permission, the mere fact that she refused to move off did not give the defendant the right to arrest her on the charge of disorderly conduct; that being a trespass in violation of law must be with criminal intent. The Court: I decline to so charge. Mr. Handy: I will strike out the last part and leave it as it was — strike out about the trespass in violation of law, and leave it as it was, your Honor, and ask your Honor to charge that way. The Court: I so charge. Mr. Mitchell: I except to that, if your Honor please, and call your attention to the fact that your Honor has already charged from the Penal Code, section 2036. It simply says a person who intrudes upon any lot or piece of land without authority from the owner — makes it a misdemeanor. Mr. Handy: *Hewitt* v. *Newburger* (141 N. Y. 538) and *People* v. *Stevens* (109 N. Y. 159) hold it must be with criminal intent. The Court: I charge as you request. Mr. Mitchell: I will take an exception." It will be perceived that the net result of the charge of the learned trial judge was practically the direction of a verdict for the plaintiff. Because he had already instructed them that if the plaintiff was between high and low-water mark the defendant had no right to interfere with her, and in granting this last request he told the jury that even though she was on the land owned by defendant in fee without his permission, and refused to move off, still he had no right to arrest her. This was directly contrary to his previous instruction that if plaintiff was on the premises of the defendant he had the right to eject her, using force if necessary, and that if plaintiff and her companions were committing any act that could be construed as disorderly conduct tending to a breach of the peace he had a right to cause that arrest. He had already instructed them: " If the plaintiff was arrested while trespassing upon the property of the defendant, and

she refused to leave the property when requested so to do, not only by the defendant but by the officer, the defendant is not responsible." Penal Law (§ 2036) is as follows: " Unlawful intrusion on real property. A person, who intrudes upon any lot or piece of land within the bounds of a city or village, without authority from the owner thereof, or who erects or occupies thereon any hut, or other structure whatever without such authority; and a person who places, erects, or occupies within the bounds of any street or avenue of a city or village, any hut, or other structure, without lawful authority, is guilty of a misdemeanor." If the plaintiff and her companions were trespassing upon defendant's land, having erected thereon a tent supported by posts driven into the ground, and refused to move off at his request without reason or explanation, it would seem that this was *prima facie* reason and probable cause for their arrest. Probable cause, as we know, does not depend upon the guilt or innocence of the party arrested. The case of *Hewitt* v. *Newburger* (141 N. Y. 538, citing *People* v. *Stevens*, 109 N. Y. 159) was a case where the plaintiff was charged under Code of Criminal Procedure (Pt. II, tit. II, chap. II, § 84) with threatening to commit a crime against the person and property of another, the crime alleged to have been threatened being found in Penal Code, sections 639 and 654 (now Penal Law, §§ 1423, 1433) and generally described as " malicious mischief." The information filed against the party accused in that case omitted any statement that the threat was willful, malicious or unlawful, and it was held that it was defective and afforded no warrant for the issuance of a warrant. In the case at bar the plaintiff was not accused of threatening to trespass; the charge was that she was upon defendant's land and refused to leave it. *People* v. *Stevens* (109 N. Y. 159) was a case of indictment of the defendant for unlawful intrusion on property, and the Court of Appeals reversed a judgment of the General Term of the Superior Court of Buffalo and affirmed the conviction of the defendant. The Court of Appeals said in that case that intent was a material element of the offense, and if the accused acted under a *bona fide* mistaken belief that he was placing a boundary fence on the line between his property and that of his neighbor he was not subject to criminal punishment.

But the Court of Appeals reversed the General Term and affirmed the conviction, because, as they say, there was no colorable ground for any claim that the accused had any right or authority to enter upon the premises. In the case at bar the learned trial judge, at request of counsel for respondent, told the jury that assuming plaintiff was in fact trespassing on defendant's land and refused to leave it without explanation or adverse claim of any kind, still defendant had no right to cause her arrest. In this we think the learned trial judge erred. If the plaintiff was in fact trespassing on defendant's land, and had erected a structure thereon without his consent, refusing to leave, and all this in defendant's presence, he had a right to arrest her himself (Code Crim. Proc. § 183), and, assuming that she was actually trespassing as the request to charge assumed, the police officer had a right to arrest her. (Code Crim. Proc. § 177.)

At the close of the charge the counsel for the defendant, appellant, excepted to the court's definition of the relative rights of plaintiff and defendant between high and low-water mark, " in view of the deeds in question, the defendant contends the right not only to high and low-water mark, but also under common law that the plaintiff had simply the right to pass and repass without any other rights on it," and defendant also excepted to the submission to the jury of the question of false imprisonment and malicious prosecution. Motions to dismiss the complaint were made at the close of plaintiff's case and again at the close of the entire case and denied, the defendant excepting. The learned trial judge charged the jury that below high-water mark upon the shore the rights of the plaintiff and defendant were equal and that all have equal rights on the beach front. He said to the jury: " So, if she was between high and low-water mark with her umbrella, her blanket and the other things that were there, she had just as much right to be there as did Mr. May, and Mr. May had no right to put her off of those premises." But there is grave doubt whether the plaintiff or Mr. May or any one else had a right, as matter of law, to erect a tent or structure of this description on the foreshore, blocking the passage of the public along the beach. The public right is to pass and repass when the tide is out and to sail and fish

over the foreshore when the tide is in, and to make such other reasonable use of the foreshore as may be consistent with the rights of others. We doubt whether it can be said as matter of law that the erection and maintenance of a tent or structure like the plaintiff's was a reasonable use of the foreshore. We know that the beaches about New York are resorted to in the summer months by multitudes of people who go there for pleasure and recreation and to bathe in the sea. It may be that at many points on the foreshore the plaintiff's tent supported upon posts occupying a space said to be five feet by ten feet would not be an unreasonable or unlawful use of a public way. We would hesitate to decide the question as matter of law. To say as matter of law that such structures are lawful, and that the plaintiff or any one else had the right to erect and maintain them, seems to go too far. It depends on the surrounding conditions whether the structure is an unreasonable use of the beach at the particular point in question, and whether it interferes with the rights of the other members of the body politic using the beach for legitimate purposes. But to say that the rights of the plaintiff and defendant in the foreshore were equal loses sight of the fact that he was, in any event, the littoral or riparian owner and had certain rights in the foreshore in front of his premises, entirely apart from his rights and privileges as one of the public resorting to the beach. (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Barnes* v. *Midland R. R. Terminal Co.,* 193 id. 378; 218 id. 91.) One of the most important rights of the riparian owner is that of access to and from the sea. It is a right possessed by him incident to his ownership of the upland without reference to whether he has any grant of land under water from the State. The evidence in the case at bar shows that the defendant had erected and maintained a public bathing establishment on his upland. He employed a lifesaver to look after the bathers, whose duty it was to watch them and go into the water to assist them in case of accident. It was this particular location, in front of the defendant's bathhouse, that the plaintiff selected to erect her tent. The Court of Appeals, through WERNER, J., said in the *Barnes Case* (*supra*), which referred to the use of part of this same South Beach, after

declaring the right of the upland owner to access to and from the water: "To the extent that the reasonable exercise of this right necessarily interfered with the right of the public to pass along the foreshore, the former was paramount and the latter was subordinate." The evidence of the plaintiff is that defendant requested her to "move down," that is, to move her tent to some other place. We think that the charge of the learned trial judge as to the relative rights of the plaintiff and defendant on the foreshore, emphasized as it was, lost sight of the paramount right of access in the defendant as riparian or littoral owner, and that it was error to instruct the jury as matter of law that plaintiff had a right to erect and maintain her structure against the defendant's protest. For the reasons stated, we are constrained to reverse the judgment.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

JENKS, P. J., MILLS, RICH and JAYCOX, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.