SAMUEL STEWART et al., Plaintiffs, *v.* HARRY TURNEY et al., Defendants.

(Supreme Court, Cayuga County, December, 1921.)

Injunctions — leases — rights of riparian owners — defendants enjoined from hunting on shore of lake where hunting privileges were leased to plaintiff by owner of uplands.

While hunting upon and fishing in navigable waters are incidental to the right of passage over them, the enjoyment of these incidents to navigation does not in any event justify the continuous use of the shore.

A lease to plaintiffs from the owner in fee of certain premises, whose title did not extend to any part of the land under water, described the property as the land "which borders or has a frontage on Cayuga Lake and is known as Judsons Point." The lease further recited that it was understood that the lessees acquired no right in the land except for hunting and trapping purposes, for which the lessees agreed to pay a stated annual rental. In an action to restrain defendants from hunting upon a portion of the shore in which plaintiffs claim the exclusive privilege of hunting under their lease, the answer alleged that the title to the waters of Cayuga lake, including the bank and the shores thereof, is vested in the people of the state of New York and that at the times mentioned in the complaint defendants were hunting on state property. It was

proven on the trial that on different occasions between certain dates all of the defendants hunted ducks from a hide or blind from that part of the lake shore included in plaintiffs' lease, and when requested to desist, refused to do so; it was also established that the premises were duly posted pursuant to the Conservation Law. *Held,* that assuming that defendants' contention as to the ownership of the soil was true, and interpreting their conduct by the most favoring rules, their position was untenable, and plaintiffs are entitled to judgment for the relief demanded in the complaint.

Certain exhibits excluded after decision reserved as to their competency, and defendants given an exception to the ruling.

Action to enjoin defendants from hunting upon premises fronting on Cayuga lake of which the plaintiffs are the lessees and claim to be entitled to the exclusive privilege of hunting thereon.

Harry A. Gleason (Frank S. Coburn, of counsel), for plaintiffs.

Nelson L. Drummond, for defendants Turney, Hoff and Dooley.

George B. Becker, for defendant Bausch.

Stephens, J.   The plaintiffs seek in this action to restrain the defendants from hunting upon a portion of the shore of Cayuga lake in which plaintiffs claim the exclusive privilege of hunting by virtue of a lease from the United States Gypsum Company, the owner of the premises bordering upon the lake; the particular acts of which plaintiffs complain are that on several occasions after the execution of the lease on October 22, 1920, the defendants hunted ducks from that part of the lake shore included in their lease and thus infringed upon their sole prerogative.

The defendants in their answer in addition to putting in issue the allegations of the complaint allege that the title to the waters of Cayuga lake, including the bank and the shores thereof, is vested in the people of the state of New York and that they were hunting on state property at the times mentioned in the complaint.

It was proven on the trial that on different occasions after October 1, and before December 10, 1920, one or more of the defendants, the different occasions, however, involving them all, hunted ducks from a hide or blind located upon that part of the lake shore included in the plaintiffs' lease, and when requested to desist, refused to do so; it was also established that the premises were duly posted pursuant to the Conservation Law.

The lease to which reference has been made and upon which the plaintiffs predicate their claim to exclude the defendants from the privilege of hunting on the shore was made by the United States Gypsum Company, who owns the fee of the upland, to the plaintiffs; it briefly describes the demised property and by way of further identifying or indicating its peculiar value refers to it as land " which borders or has a frontage on Cayuga Lake and is known as Judsons Point ` * *;" the lease further recites that it is understood that the plaintiffs acquire no right in the land except for hunting and trapping purposes; for this privilege of hunting, trapping, erecting a camp, and posting the land the lessees agreed to pay the annual rental of $100.

The deed by which the gypsum company acquired title to the property in question described the westerly and lakeside border as running " along the shore of said lake;" its title, therefore, does not extend to any part of the land under water. *City of Geneva* v. *Henson*, 195 N. Y. 447.

The plaintiffs' position is that the title of their lessors extends to low water mark; the defendants on the other hand insist with equal earnestness that the land upon which the plaintiffs have acquired hunting rights by their lease extends only to the line of vegetation or what might be termed high-water mark, leaving an expanse of shore between said line and the waters' edge over which the plaintiffs have no hunting rights superior to those of the defendants; the argument on behalf of the defendants is founded upon the proposition that the title to the soil of the bed of the lake is in the state and that the foreshore, or strip of land between the low-water mark and the high-water mark or the vegetation line, is part of the bed of the lake, and that the defendants being on state property were immune from interference by the plaintiffs.

The counsel for the defendants with great thoroughness in research have challenged a like wide excursion into the historical and judicial literature bearing upon the subject under review, but I am quite satisfied that we have travelled far afield in our quest only to find that what I believe to be the solution of the problem lay much nearer at hand.

It is not of controlling importance in whom the title to the bed of the lake is vested, nor what constitutes the bed of it, nor where the water line was formerly or is now, nor to which one of the water marks the title of plaintiffs' lessor extends; nor are we gravely concerned whether the title both to the waters and to the soil is held by the people in trust and, therefore, inalienable, or whether the waters only are held in trust for the purposes of navigation and transportation and the land beneath them held by the people as a proprietor; all this has been the subject of extended and learned discussion by the

26

Supreme Court, December, 1921.    [Vol. 117.

courts in the authorities cited, which does not greatly tend to simplify our present investigation; for as it was said in *Smith* v. *City of Rochester,* 92 N. Y. 463, at page 480, " When it is considered that the rights and interests of the public, such as fishing, ferrying and transportation, are preserved in all navigable waters by the inherent and inalienable attributes of the sovereign, it would seem to follow that the controversies which have arisen over the nominal ownership of the soil under such waters have been magnified beyond the real interests involved."

In any event, the gypsum company from whom the plaintiffs' rights are derived is a riparian owner and entitled to the privileges that inhere in such ownership; the defendants, on the other hand, have no rights in the lake or its underlying soil except such as are common to all the people at large; the plaintiffs possess not only these common rights but also the rights of the proprietor of the land adjacent to waters and it is in the recognition of this differential between public and several benefits that the precise question here for decision is to find its answer.

The rights of the public in navigable waters are not conditioned upon the ownership of the underlying soil in the state, and the state can improve them to facilitate navigation and transportation regardless of the private ownership of the bed (*Chenango Bridge Co.* v. *Paige,* 83 N. Y. 178; *Fulton L., H. & P. Co.* v. *State,* 200 id. 400), and if the state own the soil under the waters the public rights are not essentially enlarged; in the one circumstance the public have an easement in privately owned property and in the other the private owner has an easement in land owned by the people.

The rights of a riparian owner additional to those to which the public are equally entitled have not been

definitely fixed; those that have been expressly enumerated are the right of access from his upland to the navigable waters for navigation, fishing and bathing and in general phrase, for such other uses as commonly belong to such ownership, the right to erect wharves and piers if they do not interfere with the paramount public right of navigation and the right of preference to a grant by the state of the land under the water, if a grant be made and such a grant cannot be made to another that will obstruct his beneficial enjoyment of the waters; moreover, these riparian rights constitute property and if taken for public good due compensation must be made. *Rumsey* v. *New York & N. E. R. Co.,* 133 N. Y. 79; *Town of Brookhaven* v. *Smith,* 188 id. 74; *Barnes* v. *Midland R. R. T. Co.,* 193 id. 378.

Conceding for the purpose of our inquiry that the title to the shore of Cayuga lake is in the state it remains to be determined whether the defendants were within their rights in occupying a hide or blind, built either by them or the plaintiffs, on the shore, placing their decoys in the neighboring waters, for the purpose of shooting wild ducks that might respond to their lure.

That the title to the land upon which they were operating is in the state is not a sufficient answer to the claim that their presence was an invasion of the plaintiffs' rights; for even the proprietor of the shore cannot exercise all the rights of ownership to the detriment of the upland owner, for other purposes than those of commerce. *Oelsner* v. *Nassau L. & P. Co.,* 134 App. Div. 281; *Tiffany* v. *Town of Oyster Bay,* 192 id. 126.

If it were their privilege to so occupy the shore since it was not created by a grant, or by prescription, it is a privilege common to all as an incident to

the public or common rights in navigable waters and of the shore.

Hunting upon and fishing in navigable waters have been held to be incidents to the right of passage over them (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Smith* v. *Odell*, 194 App. Div. 763; *Sloan* v. *Biemiller*, 34 Ohio St. 492; *Bodi* v. *Winous P. S. C.*, 57 id. 226); but not where the title to the bed of a stream was in private ownership. *State* v. *Shannon*, 36 Ohio St. 423.

The enjoyment of these and kindred incidents to navigation, however, does not in any event justify the continuous use. of the shore. *Cortelyou* v. *Vanbrundt*, 2 Johns. 357; *Post* v. *Pearsall*, 22 Wend. 425.

It was once long ago held that the public have no highway along the margin of our navigable rivers and lakes unless the same has been acquired by grant or prescription. *Ledyard* v. *Ten Eyck*, 36 Barb. 102.

There is no practical distinction in the defendants' use of the shore as an incident to passage over the waters, or over the shore, and the beneficial use not incidental to passage; in the latter case the riparian owners can prevent such an intrusion on the shore made under a claim of right with the asserted intention of continuing it. *Johnson* v. *May*, 189 App. Div. 196.

It has not been necessary to state the varying rules relative to tidal and inland navigable waters, or those constituting boundaries, for assuming the defendants' contention as to the ownership of the soil be a valid one and interpreting their conduct by the most favoring rules, I am satisfied that their position is untenable.

I do not yield to the argument that the Cayuga Indians are necessary parties to the action; the reservation by them of hunting and fishing rights over the territory in question in the treaty with the state of New York of February, 1789, does not enlarge the

privileges of the defendants who make no claim to Indian rights, nor curtail those of the plaintiffs except as the Indians who cannot be excluded may assert their rights to fish and hunt. *People ex rel. Kennedy* v. *Becker,* 215 N. Y. 42.

It follows from the foregoing considerations that the plaintiffs are entitled to the relief demanded in the complaint.

On the trial the defendants offered in evidence certain exhibits and decision of their competency was reserved; each of them is excluded and defendants may have an exception to the ruling.

Appropriate findings may be prepared and presented for signature in accordance herewith; plaintiffs are entitled to costs.

Judgment for plaintiffs.