SAMUEL STEWART and Others, Respondents, *v.* HARRY TURNEY and Others, Appellants.

Fourth Department, November 22, 1922.

Waters and watercourses — owner of upland on Cayuga lake does not have exclusive right to use of foreshore — general public may use fore-shore in hunting wild fowl upon lake where there is no interference with access.

An owner of upland on Cayuga lake does not have the exclusive right to the use of the foreshore of the lake between high and low-water mark, the title of which is in the State of New York. Any member of the general public may

enter thereon and hunt wild fowl upon the lake though while doing so he walks along the water's edge or conceals himself behind a temporary barrier or hide on the foreshore and pulls his boat partially out of the water onto the beach, where there is no interference with the upland owner's right of access.

DAVIS and HUBBS, JJ., dissent, with opinion.

APPEAL by the defendants, Harry Turney and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Cayuga on the 19th day of April, 1922, upon the decision of the court rendered after a trial at the Monroe Special Term, with notice of intention to bring up for review an order granting a temporary injunction made by the county judge at the county of Cayuga on the 13th day of December, 1920.

The action was brought for a permanent injunction restraining the defendants from hunting on certain premises.

*Drummond & Hosmer,* for the appellants Harry Turney and others.

*George B. Becker,* attorney for the appellant Robert Bausch.

*Harry A. Gleason* [*Frank S. Coburn* of counsel], for the respondents.

*Charles D. Newton, Attorney-General,* filed brief by permission for the Conservation Commission.

KRUSE, P. J.:

The plaintiffs claim the exclusive right to hunt upon certain lands adjoining Cayuga lake, including the foreshore between high and low-water mark. This claim is based upon a lease from the owner giving them the exclusive right to hunt and trap upon such adjoining land. The learned judge at Special Term held with the plaintiffs and made a decision enjoining the defendants from hunting and trespassing upon the same (117 Misc. Rep. 398). Judgment was entered upon such decision and the defendants appeal.

It appears that the defendants on various occasions hunted wild ducks from the foreshore. For this purpose a frail and temporary hiding place for the hunter, made of material such as flag or brush high enough to conceal the crouched hunter, was constructed, called by hunters a hide. Artificial decoys were set out on the waters to lure the wild ducks within reach of the hunters' guns. Boats were used in setting the decoys and picking them up after the hunt was over and collecting killed or wounded birds. When not in use the boats were drawn partly out of the water onto the beach. The hunters stood and walked along the water's edge and crouched behind the hide, but none of these acts was done upon the upland. Who constructed the hide is not clear; it was at the water's edge.

No complaint is made of any specific act of the defendants in

making or using the hide, or anything else, except the general claim that the plaintiffs have the exclusive right to hunt there and the defendants have no such right at all, and defendants are thus broadly enjoined by the terms of the judgment. The premises seem to have been posted as a private preserve in accordance with law, and if the title of the upland owner had included the fore-shore there might be no difficulty in upholding the judgment. (12 R. C. L. 687, 689, §§ 5, 6, and cases there cited.)

But the defendants contend that the title of the bed of the lake and the foreshore is in the State, and the decision rests upon the proposition that the owner of the upland as a riparian owner has the exclusive right as against the defendants to utilize the foreshore in hunting, although the title thereto is in the State, and such is the plaintiffs' position here. It is undoubtedly true that the owner of the upland has the right of access therefrom over the foreshore to the waters of the lake for navigation, fishing and bathing and such other uses as commonly belong to such owner-ship. (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Barnes* v. *Midland R. R. Terminal Co.,* 193 id. 378; *Tiffany* v. *Town of Oyster Bay,* 234 id. 15.) And I think he may utilize the foreshore in hunting, but such use is not absolute and exclusive. The public at large also have the right to use the same. (*Murphy* v. *City of Brooklyn,* 98 N. Y. 642, 644, and cases above cited.)

In the *Murphy* case, where it was held that the foreshore was not a highway, it was said: " Every one can, however, unless the public authorities by lawful action interfere, go upon the seashore between high and low-water mark, to fish, to bathe, or for any other lawful purpose."

The question has more frequently arisen in cases where the tide ebbs and flows. Such was the *Brookhaven* case. But in the *Barnes* case it was held that the doctrine of the *Brookhaven* case was applicable to inland lakes and other navigable waters, and as regards the rights of the public it was said: " The same reasons which underlie the decision in the *Brookhaven* case as to the rights of littoral and riparian owners, apply with even greater force to the right of the public to use the foreshore upon the margin of our tide waters for fishing, bathing and boating, to all of which the right of passage may be said to be a necessary incident."

And I think this is true of the shores of our navigable inland lakes. The rights of the public are, however, subordinate to the riparian rights reasonably exercised by the owner of the upland in connection with the use of his premises. It may not always be easy to determine the relative rights in a given case where there is a conflict between a riparian owner and the public. But here

there was no interference with the right of access. The defendants did not utilize any structure belonging to plaintiffs or interfere in any way with the riparian rights of the upland owner. If the defendants had attempted to use any hunting lodge or any other structure or improvement which the plaintiffs had made a different question would be presented.

In *Oelsner* v. *Nassau Light & Power Co.* (134 App. Div. 281), where it appears the defendant had erected telephone poles on the shore of an arm of Long Island sound between high and low-water marks, seventeen or eighteen of which were in front of the plaintiff's uplands, set 100 feet apart, a judgment in favor of the upland owner restraining the maintenance of the poles was reversed. It was held that in order to maintain the action it must appear that there was some substantial interference with the easement of the upland owner.

The decision under review proceeds upon the broad ground that the plaintiffs have the exclusive right to hunt upon these premises, including the foreshore, and that the defendants have no right to utilize the foreshore in hunting wild fowl upon the lake, as was done by them. This, I think, is erroneous.

The judgment should, therefore, be reversed and the complaint dismissed, with costs.

All concur, CLARK, J., in a separate memorandum, except HUBBS and DAVIS, JJ., who dissent in an opinion by DAVIS, J., and vote for affirmance.

CLARK, J. (concurring):

A riparian owner has the right of access to and navigation on navigable waters as one of the incidents of his title to uplands, and if defendants had attempted to erect a permanent structure between high and low-water marks, which interfered with such rights, they could have been restrained under the authority of *Tiffany* v. *Town of Oyster Bay* (192 App. Div. 126), but in this case defendants in what they did exercised little more than the right of passage over the land between high and low-water marks adjacent to plaintiffs' property, and this right of passage over the foreshore was possessed by the public, of which defendants were a part. (*Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y. 378; *Johnson* v. *May,* 189 App. Div. 196.)

Plaintiffs had no exclusive rights except to high-water mark. Their principal right between high and low-water marks is " a right of access over [the land] to the navigable waters " (*Oelsner* v. *Nassau Light & Power Co.*, 134 App. Div. 281; *Johnson* v. *May,* 189 id. 196), but they had no exclusive right of hunting on the lands between

high and low-water marks. So long as defendants did not interfere with plaintiffs' access to the lake they could not be restrained in their right of passage over the territory in question, and hunting game from that territory.

I, therefore, concur for reversal.

DAVIS, J. (dissenting):

I must dissent from the decision about to be made.

The plaintiffs have leased from the owner certain lands adjacent to Cayuga lake for the purpose of hunting, particularly wild fowl. There is a beach or shore between high and low-water mark of the lake about twenty-four feet in width. This beach the plaintiffs are accustomed to use in hunting by constructing a " hide " or " blind " where they may be concealed while the water fowl are attracted within range of their guns by decoys placed upon the water near the shore. They have posted these lands pursuant to the provisions of section 362 of the Conservation Law (added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508),* forbidding other hunters trespassing thereon.

The defendants have come upon this shore and have themselves erected " blinds " and have occupied the beach for hunting, placing their decoys in the water, and at times practically excluding plaintiffs from the shore, or participation in the sport. By the judgment in this case the defendants have been enjoined from such trespass, and they have appealed to test the validity of their claim to equal rights with plaintiffs to the use of the shore. They base their claim on their rights as citizens and as a part of the general public.

Cayuga lake is a navigable body of water. The waters near the shore at this particular point are not navigable except by rowboats and craft of that nature. The question presented here involves consideration of the nature and extent of riparian rights as compared with those of persons claiming only the common right of hunting.

The owner of land bounded upon navigable waters has certain rights therein other than those belonging to the public. They do not depend upon the ownership of the soil to the center of the stream. (29 Cyc. 333.) The owner has the right of free communication between his premises and the navigable channel. (*Hinkley* v. *State of New York*, 202 App. Div. 572; 29 Cyc. 336.) It is subject to the public right of passage over the waters, and to the dominion of the State and Federal governments in aid of navigation. (*Oelsner* v. *Nassau Light & Power Co.*, 134 App. Div. 281.) This right of access is property and any act that makes his land less accessible to the water is an injury for which compensation may be

---

* Since amd. by Laws of 1921, chap. 466.— [REP.

awarded the owner (*Matter of City of New York,* 168 N. Y. 134) or the obstruction enjoined.   (29 Cyc. 337.)

In *Town of Brookhaven* v. *Smith* (188 N. Y. 74, 87) GRAY, J., says: " The right of access is conceded to be a valuable one and, unless the foreshore has been appropriated by the general government to some superior and lawful public use, as for example by grant to a municipality or for navigation purposes, it is entitled to the protection of the law."

In addition to the right of access, the riparian owner has the right to use the water though he does not own it.   His cattle may go to the water to drink. (*Sisson* v. *Cummings,* 35 Hun, 22; revd., on other grounds, 106 N. Y. 56; 40 Cyc. 564, 565.)   He may build a private wharf, landing or pier extending from his land over the shore and into the water, if he does not thereby impede or obstruct navigation. (*Yates* v. *Milwaukee,* 10 Wall. 497; *Rumsey* v. *New York & N. E. R. R. Co.,* 133 N. Y. 79.)   When an upland owner builds a cottage near the shore, his right to use the beach for bathing may not be impaired by the construction of a public bathhouse or other structure between him and the water's edge. (*Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15; *Johnson* v. *May,* 189 App. Div. 196.)   Such riparian rights are not easements or appurtenances but are inseparably annexed to the soil and are part and parcel of the land itself. (40 Cyc. 561.)   These rights on inland waters are of a somewhat different nature from those connected with the sea where the foreshore is intermittently covered with tidal waters.   As to the latter the *jus publicum* is by necessity and by long-established precedent given greater recognition, particularly where it depends on ancient grants. (*Tiffany* v. *Town of Oyster Bay, supra; Barnes* v. *Midland R. R. Terminal Co.,* 193 N. Y. 378.)

I have taken into consideration only the rights of private owners, and not those of municipal corporations which may have acquired by grant both the upland and lands under water, where the riparian rights and the public right would be greatly enlarged.   I have mentioned the private riparian rights to indicate their substantial character.   It is not claimed that all these rights have been attacked or seriously impaired by any act of the defendants.   I have recited them for the purpose of making comparison with any rights the defendants may assert.   Whatever rights the latter may have are common to the public.   If they may come freely and camp upon the shore for any period of time they elect, so may all other citizens of the State.   If they may do it here, then they may also on the banks of any other navigable lake or stream.   If they and all others have that right, the rights of the upland owner which I have enumerated may readily be made of little value.

The right of fishery in navigable or tide waters is a common right. (*Trustees of Brookhaven* v. *Strong,* 60 N. Y. 56; *Slingerland* v. *International Contracting Co.,* 43 App. Div. 215, 220; affd., 169 N. Y. 60.) This right is subordinate to the public right of navigation. (*Rocky Point Oyster Co.* v. *Standard Oil Co.,* 265 Fed. Rep. 379; *Lewis Blue Point Oyster C. Co.* v. *Briggs,* 198 N. Y. 287; 26 C. J. 604.) The right of hunting or fishing on public lands and waters belongs in common to all members of the public except in so far as exclusive rights to hunt or fish on a portion of such lands or waters have been acquired by a private person by grant or prescription. (*Ne-Pee-Nauk Club* v. *Wilson,* 96 Wis. 290; 19 Cyc. 992.) On public waters this right is incidental to the right of navigation. (*Smith* v. *Odell,* 194 App. Div. 763; revd., 234 N. Y. 267.)

This general rule relative to hunting and fishing rights is limited by statutory regulations and by the common-law rule which protects riparian owners from trespass or unlawful interference with valuable rights they may have incident to ownership of lands adjacent to navigable waters. While the ownership of wild fowl or animals is in the State (Conservation Law, § 175, as added by Laws of 1912, chap. 318), the right of citizens under restrictions made by statute to take or kill such game is recognized. But that right is limited at the option of the owner of a private park or lands to restrict or prevent other persons killing or taking birds or other game on such property. (Conservation Law, § 361, added by Laws of 1912, chap. 318, as amd. by Laws of 1917, chap. 492; * Id. § 362, added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508; † Id. § 365, added by Laws of 1912, chap. 318, as amd. by Laws of 1914, chap. 92.†)

Such common rights so restricted are those upon which defendants rely in opposing the superior rights claimed by the plaintiffs as lessees of the lands adjoining the lake. It is obvious that their roots are in no very firm and certain ground. They are annexed to no lands but are transient and unstable in their character. The individual, by legislation applicable generally to the public, may be deprived of them, without becoming entitled to compensation.

The State permits its citizens to exercise the common-law right to hunt or fish on certain public lands and waters, where its title and rights are absolute, like the Adirondack Forest Preserve and other parks, or where predominant, like in tidal waters or navigable waters, but it may limit and restrict that right or forbid it entirely in the public interest. The lands between high and low-water

---

\* Since amd. by Laws of 1921, chap. 466, and Laws of 1922, chap. 309.— [Rep.

† Since amd. by Laws of 1921, chap. 466.— [Rep.

mark on navigable lakes and streams are of a different nature from other public lands or waters. Their title undoubtedly is in the State. Yet the owner of the upland adjacent thereto has, as already stated, very substantial rights therein. The right of free communication between the upland premises and the water may not be fully enjoyed if individual citizens may claim to exercise generally the right the State possesses to enter upon the lands for the purpose only to improve navigation or perform some work for the public benefit. It seems to me evident that the rights of individual citizens of the State are greatly inferior to those of the upland owner, and consist chiefly of rights incidental to navigation and to passage. (*Johnson* v. *May, supra.*) If the right of a riparian owner means anything and possesses any value, it must be superior to the right of a stranger who makes claim only to a common right. (*Sisson* v. *Cummings, supra.*)

The public have no highway along the margin of our navigable rivers and lakes, unless the same has been acquired by express grant or prescription (*Ledyard* v. *Ten Eyck,* 36 Barb. 102); and for that matter, the seashore is not a highway for public travel upon foot or with vehicles. (*Murphy* v. *City of Brooklyn,* 98 N. Y. 642, 644.) Navigators have no right to use the banks of a stream where they are not riparian owners except by agreement, prescription or grant; but they may temporarily use a bank or shore in cases of peril or emergency. (*Post* v. *Pearsall,* 22 Wend. 425; 29 Cyc. 306.) The public right to use the shore is, therefore, at least no greater and somewhat in general more restricted than the right to use a public highway. The right to use a highway is but an easement comprehending merely the right of all individuals in a community to pass and repass, and its use by any person for any other purpose is a trespass upon the person who owns the fee of the road. (*Kelsey* v. *King,* 33 How. Pr. 39; *Cortelyou* v. *Van Brundt,* 2 Johns. 357; 37 Cyc. 205.)

I assume that no one would claim that hunting rights would include that of stopping in the highway and without the consent of the abutting owner building a "blind" by the side of the road, setting out decoys and spending long periods of time in shooting wild fowl there attracted. The right of the defendants to go upon the water in rowboats and take water fowl in certain seasons, using a blind or floating device, or a natural growth of flags, to conceal the hunter, is not disputed. (Conservation Law, § 211, added by Laws of 1912, chap. 318, as amd. by Laws of 1919, chap. 1.*) Since the commencement of this action, but prior to final judgment

---

* Since amd. by Laws of 1922, chaps. 101, 380.— [REP.

herein, such right was further restricted to the hours of daylight from half an hour before sunrise to sunset.    (See Laws of 1922, chap. 101, amdg. Conservation Law, § 211, subd. 3.)    To seek shelter from a storm, to make temporary repairs to their boat, or in some emergency, their right to bring their boat to the shore, to disembark and embark again, making temporary use of the beach, may not be denied. But this falls far short of the right to go upon the shore without any purpose of navigating the waters, and under a claim of common hunting right to occupy the same for long periods of time to the practical exclusion of the riparian owner.    (*Hall* v. *Alford,* 114 Mich. 165.)

I cannot find legal basis for such claim of right.    I reach the conclusion that the judgment restraining the defendants from continued trespass upon the lands where plaintiffs possessed superior rights was proper, and should be affirmed.

HUBBS, J., concurs.

Judgment reversed, with costs, and complaint dismissed, with costs.