TOWN OF ISLIP, Respondent, *v.* ESTATES OF HAVEMEYER POINT et al., Appellants.

Islip (town of) — lands held by town in private, as distinguished from public, ownership — authority of trustees to lease land owned by town — construction of acts of legislature and resolution adopted at town meeting authorizing trustees to lease such lands.

1. Where lands are held by a town in private, as distinguished from public, ownership, it needs no legislative authority to enable it to deal with them as its interests may require. It can devote them to the use of the inhabitants in common. It can convey them or lease them, and what the town can do it can authorize agents to do. (1 R. S. ch. 11, tit. 1, § 1, subd. 4.)

2. Where a resolution passed by a town created a permanent plan for the management of town lands and authorized trustees to lease such lands no further authority from the state was needed.

3. Such authority conferred by the town was not unlimited, although it would not permit the trustees to create unreasonable, unnecessary or unusual estates. The words conferring authority must be construed with reference to the circumstances under which they were used and the property to which they apply.

4. A term of five years for beach lands with the option of four renewals of ten years each is not on its face so unreasonable or unusual as to show as a matter of law a lack of authority on the part of trustees empowered to lease the lands of a town.

*Town of Islip* v. *Estates of Havemeyer Point*, 173 App. Div. 906, reversed.

(Argued October 9, 1918; decided November 12, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 22, 1916, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

29

*James W. Treadwell* and *Fred Ingraham* for appellants. The resolutions of 1855 were in effect in 1907 when the lease in question was made by the trustees. (*Town of North Hempstead* v. *Gallagher*, 21 Misc. Rep. 508.) The power to lease conferred by the resolutions of 1855 covered such a lease as the one in question. There being no attack upon it on any other ground than technical lack of power, the complaint should have been dismissed. (1 McAdam on Landl. & Ten. [4th ed.] 145, § 47, 247, § 74; *Wait* v. *Ray*, 67 N. Y. 36; Redman's Landl. & Ten. [6th ed.] 100; 1 Tiffany on Landl. & Ten. 159; 2 Black. Comm. 317; *People* v. *Dayton*, 55 N. Y. 367; *People* v. *Home Ins. Co.*, 92 N. Y. 328; *Power* v. *Village of Athens*, 99 N. Y. 592; *Easton* v. *Pickersgill*, 55 N. Y. 310; *Matter of Washington St. R. R. Co.*, 115 N. Y. 442; *People* v. *Murray*, 149 N. Y. 367.) Whether or not the trustees had power under the resolutions of 1855, 1857 and 1858 to make this lease, it is now too late for the town to attack it. It has been made valid by ratification and also by estoppel. (*Ahern* v. *Goodspeed*, 72 N. Y. 108; *Andrews* v. *Ætna Ins. Co.*, 92 N. Y. 596; *Peterson* v. *Mayor*, 17 N. Y. 449; *Moore* v. *Mayor*, 73 N. Y. 238; 2 Dillon on Corp. [5th ed.] 1507, § 941; *County of Randolph* v. *Post*, 93 U. S. 502; *North River Electric Co.* v. *New York*, 48 App. Div. 14; *Village of Fredonia* v. *Fredonia Gas Light Co.*, 84 Misc. Rep. 150; *Westfield Bank* v. *Cornen*, 37 N. Y. 320; *Briggs* v. *Kennett*, 8 Misc. Rep. 264; 149 N. Y. 577; *Glor* v. *Kelly*, 49 App. Div. 617; 166 N. Y. 589.)

*Henry A. Rubino* for respondent. The lease in question was an alienation of the town lands, by the trustees, without authority. (*Tuma* v. *Piepenbrink*, 160 App. Div. 225.) The town of Islip has not ratified this particular lease. (*Weismer* v. *Vil. of Douglas*, 64 N. Y. 191; *Mayor, etc.*, v. *U. F. Co.*, 55 How. Pr. 138.) The

decree was justified by the evidence. (*People ex rel. Swan* v. *Doxsee*, 136 App. Div. 400; *Weekes* v. *City of Galveston*, 21 Tex. Civ. App. 102.)

Andrews, J. Under colonial patents the town of Huntington originally owned in fee a strip of land in Suffolk county lying between the ocean and Great South bay, known as Short Beach. In 1818 it ceded this beach to the town of Islip, and in 1857 any interest of the state therein was also granted to the same town. The act by which this was done (Laws of 1857, chap. 503) provided that the electors of the town should choose at each annual (now biennial) town meeting three trustees " who shall have charge of the lands of said town, under such rules and regulations as may from time to time be made by said electors." On August 1st, 1907, the trustees then in office leased to the defendants' predecessor in title a portion of this beach for the term of five years with four options for renewal, at an increased rental, for periods of ten years each. In 1914 this action was begun to cancel the lease on the ground that in making it the trustees had exceeded their authority. The plaintiff was successful at the Special Term and the judgment in its favor was unanimously affirmed by the Appellate Division. This result was rested upon the authority of *Tuma* v. *Piepenbrink* (160 App. Div. 225). That action was brought by the trustees of the town lands of Islip to cancel a similar lease. The facts as they have been stated were alleged. A demurrer to the complaint was sustained on the ground that the plaintiff had no legal capacity to sue. But in the opinion the Appellate Division said that the trustees exceeded their authority, derived as it was wholly from the statute. They were simply placed in charge of the town lands. The electors had adopted no rules or regulations conferring more ample duties upon them. Their power must be limited

to such acts and conduct as the words used in the statute would ordinarily imply.

We have no criticism to make of this result. But in the case now before us there are findings which require a different conclusion. It appears that at a town meeting, held in April, 1855, a resolution was adopted that three trustees be elected to " have the trust of all the lands belonging to the town," and they were specifically empowered " to let or lease any part of   *   *   *   Short Beach for the purpose of erecting buildings thereon."

These lands were held by the town in private as distinguished from public ownership. It needed no legislative authority to enable it to deal with them as its interests might require. It could devote them to the use of the inhabitants in common. It could convey them or lease them. (*Kings Co. F. Ins. Company* v. *Stevens*, 101 N. Y. 411.) And what the town could do it could authorize agents to do. Such power over its corporate property was recognized by statute. (Rev. St. [4th ed.] part 1, chapter 11, tit. 1, sec. 1, subd. 4, p. 643.)

The resolution of 1855 created a permanent plan for the management of the town lands. The authority conferred was not intended to be limited to the trustees first chosen. They were elected " for the ensuing year," but the resolution shows that the duties of the trustees were to continue. That this was the construction placed upon it by the town is shown by the findings. Since 1855 all leases have been made by the trustees Many were so made and reported to various town meetings. The receipt of rent was also reported.

We regard the authority conferred by the act of 1857, therefore, as unnecessary. It was at most the confirmation of a legal act of the town meeting. But if necessary it did authorize the election of trustees, to have charge of the town lands " under such legal rules

and regulations as may from time to time be made by said electors." When, therefore, in April, 1858, the town meeting resolved that they should " have the same power and authority as was conferred upon them by the resolutions of April 3, 1855   *   *   *," legal rules and regulations within the meaning of the statute were adopted by the electors. In view of these facts, found by the trial court, and not reversed, we must treat the eighth finding of fact, that no rules or regulations have been adopted by the electors since 1857 with reference to said lands, as inconsistent. If so, the appellants are entitled to the benefit of the findings most favorable to them.

We conclude, therefore, that the trustees had the authority on behalf of the town to let or lease Short Beach. Doubtless this was not an unlimited authority. The words must be construed in the ordinary way with reference to the circumstances under which they were used and the property to which they apply. In this way they would be understood by the town and its electors at the time the authority was conferred. They would not be held to permit the trustees to create unreasonable or unnecessary estates, or estates not customary in regard to land of like nature. Evidently a lease of more than a year was contemplated. The premises consisted of a strip of beach and meadow land, and the resolution speaks of leasing lands for the purpose of erecting buildings. Leases for five and ten years were not unusual. There is no evidence that the rent reserved was inadequate. The lease in question was reported to the town meeting when made. Rent for five years was received without objection. Nor was objection made to the tenant's possession. Taxes were imposed on him and received by the town.

Under all these circumstances we cannot say that as a matter of law the term provided for was so unreasonable

or unusual as in itself to show lack of authority in the trustees.

We, therefore, hold that the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CARDOZO and POUND, JJ., concur; CUDDEBACK and CRANE, JJ., dissent.

Judgment reversed, etc.