LOUIS C. TIFFANY, Appellant, *v.* TOWN OF OYSTER BAY and WILLIAM E. KUNZ, Respondents.

Second Department, May 21, 1920.

**Waters and watercourses — riparian rights in Cold Spring Harbor — respective rights of town of Oyster Bay and riparian owners — nuisance — injunction restraining town from erecting public bathhouses on filled-in land.**

Even though it has been held that a grant of lands beneath Cold Spring Harbor made by the State to an adjacent riparian owner was void, and that the title to said lands passed to the town of Oyster Bay under the

Andros Colonial grant, the title of the town is subject to public rights of navigation and to rights of access by said riparian owner.

The title of said town to the aforesaid lands under water does not give to it the right to erect public bathhouses upon land reclaimed by the riparian owner, in reliance on his State grant, which projects out in the harbor beyond the former shore line.

The erection of such public bathhouses by the town will be enjoined although the riparian owner, the plaintiff, still has means of access to the shore over other portions of the shore line adjacent to his premises.

Moreover, where such public bathhouses are to be erected over lands which have been in the path of navigation of small vessels, the structures violate the *jus publicum* in addition to being in derogation of the rights of littoral owners and constitute a nuisance which may be abated.

The erection of such public bathhouses upon the filled-in land is enjoined with a provision that the town officials may elect to accept the riparian owner's offer to remove the fill and to restore the original shore line at his own expense.

JAYCOX, J., dissents, with opinion.

APPEAL by the plaintiff, Louis C. Tiffany, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Nassau on the 3d day of December, 1918, upon the decision of the court rendered after a trial at the Nassau Special Term dismissing the complaint upon the merits.

Plaintiff, as a riparian owner, sued in equity. He prayed for leave to restore the foreshore adjacent to his estate in Oyster Bay along the westerly shore of Cold Spring Harbor. He also asked that defendants be enjoined from building public bathhouses upon this filled-in frontage of his shore.

Originally, plaintiff had asserted rights to lands below high-water mark, under and by virtue of a formal grant of March 30, 1905, from the State of New York by the Commissioners of the Land Office. The validity of such grant was at first sustained. (*Tiffany* v. *Town of Oyster Bay*, 141 App. Div. 721.) This, however, was reversed, with a determination that the waters of Cold Spring Harbor had been included in the Andros Colonial grant (209 N. Y. 1). Plaintiff has a shore frontage of about 3,670 feet. Out upon the foreshore there had long been a wrecked hull partly embedded in sand. It projected out at about a right angle with the shore front. Behind it at high water was a masonry wall which (except where Laurel Hollow road came down to the beach) extended

along plaintiff's upland. The defendant town does not question the right to maintain this wall.

In the month of May, 1913, before the adverse decision of the appeal, a hydraulic dredge working eastward of this wreck took up sand and material which by its pipes were deposited to the westward. This, aided by the natural wash along the shore, which the wreck tended to arrest, formed a covering over shore boulders and shingle. It raised this foreshore in a sloping embankment with its front about a foot above high water.

Such newly-made land projected out into the harbor in a curved salient, with this hulk near its apex, the fill receding in both directions to the former shore lines.

After the Court of Appeals had made nugatory the grant which the State of New York had undertaken to make plaintiff, he offered, by letter and otherwise, to restore the foreshore and to remove this fill therefrom, and to undo his action by putting the shore back in the condition it had been before any changes had been made therein, which proposal the town declined.

In June, 1916, the town took possession of this filled-in land and employed defendant Kunz to build thereon a structure to contain thirty-three public bathhouses on an area of about fifty feet by ten or fifteen feet.

Plaintiff then brought this second suit for an injunction against erecting such buildings or other structures.

His complaint repeated the offer to restore the foreshore to its original condition. He asked that plaintiff be adjudged his riparian rights in such lands. After a trial, it was held that such filling in of the foreshore was a trespass; that the title of the town derived from the Andros charter authorized it to put up such projected bathhouses, and that such filled-in land could be devoted to a use for public recreation. (104 Misc. Rep. 445.) From the judgment of dismissal plaintiff took this appeal.

*Frederic R. Coudert* [*Rowland Miles* and *Wilmot T. Cox* with him on the brief], for the appellant.

*Henry A. Uterhart,* for the respondents.

PUTNAM, J.:

The prior decision (*Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1) held that the prior Andros patent took away from the State the power to grant to upland owners on this harbor any rights in lands below high-water mark. But it did not settle what were the town's rights and powers in the soil beneath Cold Spring Harbor. Such town title is subject to public rights of navigation and to the rights of access by riparian owners. (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74, 78.) As patentee of the grant including this harbor, has the town the right to erect bathhouses upon this filled-in foreshore? Can it thus use the raised beach to the prejudice of the upland owner? The town's rights were public in this estuary; such, for example, as ownership and regulation over oyster or other shell fish beds (*Rogers* v. *Jones,* 1 Wend. 237), with a general authority to preserve the harbor facilities, including the power (under the Federal government) to deepen, improve and protect them. But, except for some aid to commerce, fishing or navigation, I find no power to fill in the harbor, or to maintain parks or to establish recreation grounds upon lands reclaimed from lands under the waters of this harbor. Here the town proposes to erect an *opus manufactum*, such as a permanent building, on this outer shore fronting plaintiff's uplands. Whether the extending shore surface be from gradual accretion, as alluvion, or by more violent means, there is no authority for such a building in front of a littoral owner, to cover and encroach upon made ground where formerly were public rights to navigate at high water, and at low water a right or servitude for a highway for public passage. It is not found that this fill has obstructed the public right of passage along this shore. In discussing public rights on the sea shore, an acknowledged authority has' declared: " Quays, wharfs, and embankments in general, *below* high-water mark, convert that which was shore into *terra firma*, being, in fact, so much land gained from the sea, and therefore no longer shore. If any ground be left on the *other* side, towards the sea, that may be shore, and subject as before; but no one can suppose that an embankment by which the soil is rescued from the sea by the owner of the

shore, would be abatable as a nuisance, in favor of bathing or fishing, whilst the shore, beyond and around, is still open to the public, and these rights may be enjoyed as easily as before. Nor was it ever contended that the supposed owner of the soil of the shore has not a right to convert it into *terra firma*, at his own risk and expense, unless in so doing he created a public or local nuisance." (Hall, on " Rights of the Crown in the Sea Shores of the Realm ". [2d ed. 1875], 179, 180.) Plaintiff's action in May, 1913, in placing material along the foreshore was in no sense a trespass. He exercised a legal right, subject, possibly, on reversal of his judgment, to the obligation to make restitution. (*Manning's Case*, 8 Coke, 94; Freem. Judg. [4th ed.] § 482.) Indeed, the old form of a decree of reversal directed " that the defendant be restored to all things which he has lost on occasion of the judgment aforesaid." (*Haebler v. Myers*, 132 N. Y. 363, 366.) This duty plaintiff recognized in his prompt offer to restore the *status quo*.

But even if the solemn grant from the State as sovereign, and its confirmation by a divided court, be ignored, and plaintiff's act in improving his front be tested by the final outcome of his litigation, it was not unlike the instance of a wharf owner extending his structure beyond harbor lines. The part going beyond the limits could be removed as a nuisance (*People v. Vanderbilt*, 38 Barb. 282; affd., 28 N. Y. 396), but not used for municipal purposes. In such circumstances lands in front of a riparian owner are not building sites save for structures in aid of navigation; and no supervening right over any part of such place can be exercised or maintained to the prejudice of the riparian owner. (*Bowman v. Wathen*, 2 McLean, 376; *Matter of City of Buffalo*, 206 N. Y. 319, 329; *Morgan v. Livingston*, 6 Mart. [La.] 228.) I cannot agree that if plaintiff still has a means of access over " a considerable portion of his original shore line," the town could take away such approach over his remaining frontage. Riparian rights include accretions to the shore, so that the boundary may go outwards with the extension of the shore line. (*Mulry v. Norton*, 100 N. Y. 424.)

The town itself cannot lawfully interfere with, much less obstruct by buildings, public rights of passage along such

foreshore. At one stage of the tide such buildings are over lands that have been in the path of navigation of small vessels. At the ebb, such structures violate the *jus publicum*, and could be abated as a purpresture or a nuisance. So they are against public rights as well as in derogation of those of the littoral owner. (*Johnson* v. *May*, 189 App. Div. 196, 203.)

A public bathhouse incidentally raises another question. The public have no right to pass over the foreshore in England to bathe in the sea. (*Brinckman* v. *Matley*, L. R. [1904] 2 Ch. 313.) The public right to bathe, save at designated places, is doubtful in this country. (*Hunt* v. *Graham*, 15 Penn. Super. Ct. Rep. 42.)

As land held by towns under Colonial patent is proprietary, so that its disposition and control do not require legislative sanction (*Town of Islip* v. *Estates of Havemeyer Point*, 224 N. Y. 449), special scrutiny should be given to such rights over bays, harbors and waters, to see that, by novel assertion thereof, the rights of upland owners be not sacrified.

I advise that the judgment be reversed, and that defendants be restrained from erecting bathhouses, or other permanent structures, upon this filled-in land; with, however, a provision that the officials of Oyster Bay, notwithstanding their former refusal, may within thirty days elect to have this fill removed, and the shore restored at the plaintiff's expense; that the finding of fact numbered 2 be modified by striking out the words "in front of his entire upland;" findings of fact numbered 8, 9, 10 and 13, and the conclusions of law numbered 3, 4, 5, 7 and 8 be severally reversed and rescinded. This reversal to be without costs of this appeal.

MILLS, RICH and KELLY, JJ., concur; JAYCOX, J., reads to affirm.

JAYCOX, J. (dissenting):

The questions involved in this case necessarily are only those arising between the plaintiff, as an upland owner, and the town of Oyster Bay, as the owner of the land under water in Cold Spring Harbor adjoining the plaintiff's upland. The question of the rights of navigation or as to whether the land which the plaintiff seeks to remove constitute a purpresture

or not are not involved in this action. Those questions can be determined only in an action instituted by the sovereign power having control of navigation. The right of the town to establish a park or to build bathhouses for the accommodation of the public cannot be determined in this action, as such an action is brought by a taxpayer against a public officer. (Code Civ. Proc. § 1925; Gen. Mun. Law, § 51.) Any discussion, therefore, of questions which might be involved in actions of that character is not germane to the questions here presented.

The plaintiff is the owner of a large tract of upland on the westerly side of Cold Spring Harbor at or near the head of the harbor. He applied to the Commissioners of the Land Office of the State of New York for a grant of land under the waters of said harbor in front of his upland. This application was opposed by the town but was granted by the said Commissioners and a grant was made to the plaintiff on the 30th of March, 1905, of something over twenty-one acres of land under the waters of said harbor. As soon as the plaintiff started to make improvements upon the land thus granted, he was notified by the authorities of the town of Oyster Bay that it claimed title to the lands under the water of said harbor, and the plaintiff having refused to remove the structures placed upon the premises by him, the town commenced to remove the same. Thereafter, and on or about April 25, 1908, the plaintiff commenced an action in the Supreme Court against the town of Oyster Bay and the then highway commissioner of the town, seeking to restrain the defendants from removing or attempting to remove any jetty, wall or structure erected by the plaintiff on the premises below high-water mark. This action was brought to trial at Special Term and a decision rendered in favor of the plaintiff granting the injunction as prayed for. The judgment was entered January 7, 1909. An appeal was then taken to the Appellate Division, where the judgment was affirmed by a divided court (141 App. Div. 720). Upon an appeal by the defendants to the Court of Appeals the judgment in favor of the plaintiff was reversed. (209 N. Y. 1). Upon a new trial the complaint was dismissed upon the merits by a judgment entered February 7, 1914. In the meantime, and while the

case was pending in the Court of Appeals, the plaintiff filled in the land below high-water mark, creating a strip of filled-in land between his upland and the waters of Cold Spring Harbor, which is the subject of this controversy. This land was accessible to the people of the town by means of a highway which runs through the plaintiff's lands to the waters of Cold Spring Harbor. By the decision last above cited (209 N. Y. 1) it was finally determined that the town was the owner of the lands under water in Cold Spring Harbor. Under the doctrine of the common law the line of high-water mark divided the lands owned by the plaintiff from those owned by the defendants. (3 Kent Comm. 427; *Howard* v. *Ingersoll*, 13 How. [U. S.] 381, 421; *United States* v. *Pacheco*, 2 Wall. 587.) The filling in by the plaintiff, as above mentioned, raised the land upon which such fill was made so that the surface of the land was above the high-water mark. Since the entry of the final judgment herein the plaintiff has offered to remove the fill and restore the premises to their original condition. This offer has been declined by the town. Thereafter, and in June, 1916, the defendant town employed the defendant Kunz to erect bathhouses upon this filled-in land. These bathhouses are to be about fifty feet by ten or fifteen feet in size. This action is brought to restrain the erection of the bathhouses in question and for an adjudication that the plaintiff is still the riparian or littoral landowner and has the same rights across the property in question as if no filling in had been done, and that the plaintiff may be permitted to restore the foreshore in front of his premises to the condition in which it was before any improvements or changes were made by him. There is no claim by either party that the filling in done by the plaintiff changed the boundary line between the lands owned by the plaintiff and the defendant town.

I think the determination of this action can be based upon the solution of one question only, and that is — has the plaintiff shown himself entitled to equitable relief? The claim of the town to the ownership of the lands under water of this harbor is not a modern conception of its rights under the charter or patent granted by Governor Andros to it on the 29th day of September, 1677. In *Rogers* v. *Jones* (1 Wend. 237) it was held that the town of Oyster Bay had an exclusive

right of the shell-fishing in Oyster Bay, by which name Cold Spring Harbor is also known. That action was to recover a penalty prescribed in the by-laws of the town of Oyster Bay, passed at a town meeting April 5, 1825, by which it was provided that " no person, not being an inhabitant of Oyster-Bay, shall be allowed to rake, or assist in taking or raking, or employ another to take or rake any oysters in the creeks or harbors of the town of Oyster-Bay, under the penalty of twelve dollars and fifty cents for each offense." It was held in that action that the town of Oyster Bay had an exclusive right of the fishing in these waters under its Colonial charter, and the judgment in favor of the supervisors of the town was affirmed. In its discussion of the case the court assumed that the town of Oyster Bay acquired title to the land under the waters of Oyster Bay under the Andros patent. In *Lowndes* v. *Huntington* (153 U. S. 1) a similar question arose and the court held in regard to a patent immediately adjoining the patent to the town of Oyster Bay and with the same northern boundary line, that the waters of Huntington Harbor were included within the bounds of the patent, and cited *Rogers* v. *Jones* (*supra*) as being in point. These two precedents are clearly in point and both indicated that the town was the owner of the lands under the waters of Cold Spring Harbor. I think there were also other cases which supported this contention in that respect. (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Town of Southampton* v. *Mecox Bay Oyster Co.*, 116 id. 1.)

This was the condition of the law when the plaintiff made his application to the Commissioners of the Land Office. The defendant town was guilty of no laches; it did not sleep upon its rights; it asserted them promptly, with insistence and pertinacity. The situation is, therefore, that the plaintiff, against the defendant's protest, has changed the defendant's property from land under water to upland, in which condition he manifestly wished to use it for bathhouses and other kindred purposes and now, when the defendant wishes to make use of it for the same purpose, the plaintiff seeks to restrain the town from such use of the land and desires to be permitted to restore the property to its former condition. When the plaintiff did the filling in in question, he was a trespasser, and he now

wants permission to go again upon this land and attempt to restore it to its former condition. Against thé defendant's will he filled the property in and still against the defendant's will he wishes to change the property back to its original condition. The advice of counsel, I think, does not justify the invasion of another's rights. The plaintiff, having invaded the defendant's property, cannot under any rule of law to which my attention has been called be permitted to again invade the defendant's property for the purpose of removing the structure erected during the first trespass. (*Putnam* v. *Ritchie,* 6 Paige, 390, 405; *Kansas Pacific Ry. Co.* v. *Mihlman,* 17 Kans. 224, 233; *Pettes* v. *Bank of Whitehall,* 17 Vt. 435, 445; *Warner* v. *Fountain,* 28 Wis. 405.) In *Putnam* v. *Ritchie* (*supra*) Chancellor WALWORTH said: " I have not, however, been able to find any case, either in this country or in England, wherein the Court of Chancery has assumed jurisdiction to give relief to a complainant, who has made improvements upon land the legal title to which was in the defendant, where there has been neither fraud or acquiescence on the part of the latter after he had knowledge of his legal rights. I do not, therefore, feel myself authorized to introduce a new principle into the law of this court, without the sanction of the Legislature, which principle in its application to future cases might be productive of more injury than benefit."

In *Kansas Pacific Ry. Co.* v. *Mihlman* (*supra*) the facts are closely analogous to the facts involved in this case. In that case a trespasser had dug a ditch upon the property of another and it was held that he had no right to re-enter for the purpose of filling up the ditch and restoring it to its original condition even if the defendant originally dug the ditch in the belief that he had a right to do so. Mr. Justice BREWER said: "And what right does the first trespass give the trespasser to reenter and commit a second trespass? True, in this case [*i. e., Holmes* v. *Wilson,* 37 Eng. C. L. 273] the plaintiff had requested the trustees to remove the buttresses, and that might be considered a license to enter, and a waiver of the trespass. But where there is no such request, as in the case before us, how is it? If the railway company had entered to fill up the ditches, could not Mihlman have maintained his action for that as a trespass? Was he not at liberty to appropriate the

benefit of the company's work in digging the ditches, and prevent any person from interfering therewith, and recover damages from anyone that did interfere? It seems so to us, unquestionably."

In *Warner* v. *Fountain* (*supra*) it was held that where one person by mistake builds a house upon the lands of another the house belongs to the latter and cannot be removed by the former. (See, also, *Village of St. Johnsville* v. *Smith*, 184 N. Y. 341.)

These authorities, I think, are conclusive. The plaintiff has not shown himself entitled to relief in equity. I am not unmindful of the fact that there are authorities to the effect that the owner of land upon which a structure has been erected by mistake, upon going into equity for relief in some respect may be compelled to pay the value of the structure erected upon his premises. Those cases, however, are not in point here, and I see no benefit to be derived from their discussion. If I am correct in holding that the plaintiff is not entitled to equitable relief, then I think the conclusion necessarily follows that the land upon which the defendant seeks to erect bath-houses is upland, and it is entitled to make such use of this upland as it sees fit. The defendant's land was land under water. Some portion of it was covered with water at all tides, as I understand the situation, and some portion of it was submerged at high tide and laid bare at low tide. The plaintiff converted all of it into upland. He desired to use it himself as upland, but now that his title to it has failed, he desires to prevent the defendant from making such use of it. It is true that under this situation the waters of the bay would no longer lap the shores of the plaintiff's property, but that is a situation of his own creation. If in time the action of the waters washes this fill away, the plaintiff will be restored to his original position. I think he must rest content with the situation as he created it.

My brother PUTNAM in his opinion says: " The town itself cannot lawfully interfere with, much less obstruct by buildings, public rights of passage along such foreshore. At one stage of the tide such buildings are over lands that have been in the path of navigation of small vessels. At the ebb, such structures violate the *jus publicum*, and could be abated as a purpresture

or a nuisance. So they are against public rights as well as in derogation of those of the littoral owner." The foreshore, as this quotation would indicate, is the space between high- and low-water mark. (*Stillman* v. *Burfeind*, 21 App. Div. 13.) The buildings complained of here are not upon the foreshore. They may be where the foreshore was before the plaintiff changed the contour of the shore. Now, however, they are above high-water mark upon the land filled in by the plaintiff, and do not in any way obstruct the passage of the public along the foreshore.

I agree with the conclusion of my associate that the defendant was entitled to restitution if it desired it, and *Haebler* v. *Myers* (132 N. Y. 363) and the other cases cited are authority for this proposition, but no case is cited and I have seen none in which it is held that the successful party may have restitution forced upon him whether he desires it or not.

It is now proposed to reverse the judgment in this case upon the curious theory that the upland created by the plaintiff in this action is a nuisance because it obstructs navigation. The answers to this are numerous and complete. *First,* The action is not based upon any such theory. The plaintiff seeks to enjoin the erection of the bathhouses and to be permitted to remove the fill made by him because it interferes with his approach to the water and not because it in any wise interferes with navigation. *Second.* As an interference with navigation it causes no special injury to the plaintiff, and the plaintiff would not, therefore, be entitled to maintain an action to have the same abated. *Third.* When the plaintiff made this fill and created this upland it was done to improve navigation and for the benefit of commerce, and I am sure the change of ownership will not convert the benefit or improvement into a nuisance. Real estate is not endowed with any such chameleon-like characteristics. If this upland did not interfere with navigation when the plaintiff owned it, it is quite certain it does not interfere with navigation now.

The right of the public to pass along the foreshore for the purpose of bathing is not involved in this action. The public right of passage upon the foreshore is not interfered with by these buildings. For these reasons I recommend that the judgment appealed from be affirmed, with costs.

Judgment reversed, and judgment directed for plaintiff restraining defendants from erecting bathhouses or other structures upon the filled-in land fronting plaintiff's uplands, without costs of this appeal, with leave to the town officials, notwithstanding their prior refusal, within thirty days, to elect to have the fill removed and shore restored at plaintiff's expense.   Finding of fact numbered 2 modified by striking out the words " in front of his entire upland."   Findings numbered 8, 9, 10 and 13, and conclusions of law numbered 3, 4, 5, 7 and 8 reversed and rescinded.   Settle order with findings upon five days' notice, before Mr. Justice PUTNAM.