Auburn and Syracuse Electric Railroad Company, Plaintiff, *v.*
Andrew Jaeckel, Jr., and Robert Graham, Defendants.

Supreme Court, Cayuga Equity Term, April, 1922.

**Real property — deed to state of strip of land for new stream channel —
grantor reserving land on either side of channel to the top of the bank
— when grantor and those claiming under him and owning the upland
entitled to access to stream — injunction — right of upland owner to
restrain continuance of building on top of bank which impedes his free
access to stream although it was erected under permit from state
superintendent of public works.**

In 1852, by a deed of conveyance, the state acquired title to " a strip of land for
a new channel for the outlet of the Owasco Lake across Hubbard's Point, so called,
forty-three feet wide at the bottom of said channel   *   *   *   with the necessary
banks thereof on either side to prevent earth therefrom from falling into the
stream." The deed expressly provided that the grantor should retain " possession
of the land on either side of the said new channel to the top of the banks thereof
at whatever width the said new channel may be opened." In the course of
time riprap which had been placed on either side of the new channel, extending
partially up the bank, became to some extent broken and the unprotected portion
of the bank fell away leaving the line of the top of the bank more or less irregular
through the operation, not only of natural causes but by the use of the bank
as a landing place for those navigating the channel in boats or canoes. *Held*,
that as the grantee required for the beneficial use of the property only a channel
through which water could flow and only such control over the banks as would
enable it to protect the channel from filling, it was consonant with the proba-
bilities that the parties intended that the grantor should retain possession of
the slope of each bank of the channel to the top of the bank, thus preserving
to him the equal right of access to the artificial stream that he enjoyed in
connection with the natural outlet of the lake.

The grantor, subject to the conditions of his deed to the state, in 1863 conveyed
the premises now owned by plaintiff, the parcel having the artificial channel
on its western boundary, together with other lands westerly of the new outlet
to the lake. The plaintiff immediately succeeded to the title of a railway
company by virtue of a consolidation agreement. In the deed to the railway
company that part of the land, now plaintiff's, is bounded by two lines, one
running " to the east bank of the new channel of the outlet of Owasco lake,"
and the other running " thence   *   *   *   along the said east bank," and the
deed recited that the intention was to convey " all the land lying east of the
new outlet." *Held*, that while the deed to the railway company contained no
express reference to any right of possession of the east bank of the channel, the
law will imply that the grantors parted with all their interest in the land and
the total interest of the grantor to the state by successive transfers of title by
grant and by devise became vested in the plaintiff, in the absence of express
terms indicating a contrary intent. Real Prop. Law, § 245.

Under the deed to the state and the necessary implications that follow from it
and the subsequent transfers, plaintiff was entitled to the use of the bank of
the channel for the purpose of access to the water, and the state though the owner
of the land under water could not itself erect buildings or permit others to do
so that would interfere with the superior right of plaintiff to easy and uninter-
rupted access to the stream.

Where, therefore, under a permit issued by the superintendent of public works
of the state, defendants, in order to conveniently cater to the needs of a holiday
crowd, erected a wooden building twelve by fourteen feet, the longest dimension
of which was placed two and one-half to three feet westerly from the line of the

broken bank, the floor being practically on a level with the top of the bank and the space in front between the line of the bank and the building filled in, the plaintiff will be granted a permanent injunction restraining the defendant from maintaining and continuing said building and from selling refreshments and other merchandise therein.

ACTION to restrain the defendant permanently from maintaining and continuing a building on land to the possession of which the plaintiff claims it is alone entitled and from selling refreshments and other merchandise in said building.

*Edwin Nottingham,* for plaintiff.

*Richard T. Anderson,* for defendants.

STEPHENS, J.   The plaintiff is the owner and in possession of a parcel of land bordering on Owasco lake near the city of Auburn, containing upwards of thirty-two acres which it maintains as a pleasure ground.   It has built a pavilion and other structures constituting the usual equipment of a summer playground, laid out lawns, walks and drives, and embellished the park with trees, shrubs and flowers, with the purpose of attracting to its property those seeking recreation.   It has extended its street railway lines in the city of Auburn to the park it has thus created for the purpose of transporting visitors there.

The said park s bounded on the west by the outlet of Owasco lake.   This outlet for a part of the distance is an artificial channel constructed by the state many years ago to take the place of or to supplement the natural sinuous outlet which was a feeder to the canal system of the state.

At the time the art ficial outlet was planned the plaintiff's land and land westerly of the proposed new channel were in the common ownership of one Hubbard.   On September 22, 1852, said Hubbard and his wife by deed dated that day conveyed to the state of New York " a strip of land for a new channel for the outlet of the Owasco Lake across Hubbard's Point, so called, forty-three feet wide at the bottom of said channel   *   *   *   with the necessary banks thereof on either side to prevent earth therefrom from falling into the stream   *   *   *.   But it is expressly provided that the said party of the first part shall retain possession of the land on either side of the said new channel to the top of the banks thereof at whatever width the said new channel may be opened   *   *   * ."

The new channel was excavated and at that time or later riprap was placed on either side of it extending partially up the bank.   In the course of time this riprap was to some extent broken up and the portion of the bank unprotected by it has fallen away, leaving the line of the top of the bank more or less irregular through the operation, not only of natural causes but by the use of the bank as

a landing place for those who navigate the channel in boats or canoes.

By mesne conveyances the plaintiff acquired the parcel of land having the artificial channel on its western boundary. The plaintiff immediately succeeded to the title of the Auburn City Railway Company by virtue of a consolidation agreement, so called. In the deed to the Auburn City Railway Company that part of the land with which we are intimately concerned is bounded by the two lines, one running " to the east bank of the new channel of the outlet of Owasco Lake " and the next one running " thence   *   *   * along the said east bank   *   *   *." The deed contains the recital " this conveyance is intended to convey all the land lying east of the new outlet   *   *   *." The deed contains no express provision with reference to the right of possession of the bank of the channel.

In May, 1921, the defendants erected a one-story wooden building, twelve by fourteen feet, after the fashion of architecture that lends itself most conveniently to dispense hot sausages, soft drinks and other needs of a holiday crowd. The building rests on supports placed in the channel over which it extends. The front line of the booth, which is its longer dimension, was placed two and one-half to three feet westerly from the line of the broken bank. The floor of it is practically on a level with the top of the bank and in front the space between the line of the bank and the building was filled in.

The defendants found their right to build the booth and to the space which it occupies upon a permit issued by the superintendent of public works of the state of New York to the defendant Jaeckel, July 18, 1921.

Our problem, therefore, is to determine the respective rights of the plaintiff and of the state to the possession of the sloping bank of the channel between the water's edge and the top of the bank, the rights, if any, of the defendants being derivative from the state.

Our first inquiry is into the effect of the above-quoted provision in the deed from Hubbard to the state. The areas therein described of which the grantor retained possession were, of course, on one side or the other of the lines that define the tops of the respective banks, and may be designated for convenience as the areas on the land side and on the water side of said lines. The provision is applicable to the land side areas only if the grantor had in mind that the state might excavate a channel less than forty-three feet in width, in which event possession was not surrendered to the land necessary for the wider stream. It is, however, more consonant with the probabilities that the parties to the deed intended that the grantor should retain possession of the water side areas; that is, the slope

of each bank of the channel to the top of the bank, thus preserving to the grantor the equal right of access to the artificial stream that he enjoyed in connection with the natural outlet. Moreover, the grantee required for the beneficial use of the property only a channel through which water could flow and such control over the banks as would enable it to protect the channel from filling. There seems to me to be no other rational interpretation of the quoted language of the deed.

The said Hubbard and wife, by deed dated December 23, 1863, conveyed the premises here in question together with other lands westerly of the new outlet to one Norwood, " excepting therefrom the premises conveyed by said Hubbard and wife to the State of New York by deed * * * subject to the conditions of said deed."

In the deed by which the Auburn City Railway Company acquired title to the land east of the new outlet no express reference is made to any right of possession of the east bank of the channel; but the law in the absence of any express mention of it will imply that the grantors parted with all of the interest in the land that they had. The total interest of Hubbard by the successive transfers of title by grant and by devise became vested in the plaintiff in the absence of express terms indicating a contrary intent. Real Prop. Law, § 245; *Clark* v. *Durland*, 35 App. Div. 312; 104 id. 615; affd., 187 N. Y. 560; *Mason* v. *Thwing*, 94 App. Div. 77; *Blackman* v. *Striker*, 142 N. Y. 555.

The relative rights of the respective parties that may be dependent upon the rules applicable to riparian owners of land adjacent to waters whose underlying soil is in other ownership have been urged upon my attention; they do not seem to me to be especially pertinent to our inquiry for the rights of the parties here are to be determined by the contract entered into through the medium of the deed from Hubbard to the state of New York and the necessary implications that follow from it and the subsequent transfers. Those rules are significant as an aid in the interpretation of the deed. By its terms it definitely secured to the grantor the rights of a riparian owner, and as above suggested that purpose seemed to inspire the use of the terms employed in the deed. However, if resort were to be made to them, they would yield the same result, that the plaintiff is entitled to the use of the bank of the channel for the purpose of access to the water and that the owner of the soil underlying the water, though the state be such owner, cannot itself erect buildings or permit others to do so that would interfere with the superior right of the riparian owner to easy and uninterrupted access to the stream. *Tiffany* v. *Town of Oyster Bay,* 192 App. Div. 126.

I am quite unable to entertain seriously the argument predicated upon the use of the roadway near or along the bank. Whatever right of passage the public may have acquired, if any, either by a grant or by prescription that presumes a grant, does not enlarge the rights of the state in the bank of the channel. Even if a right of passage gives to the public freer and easier access to the outlet, to that extent only is the plaintiff's right to access modified or restricted. The public at best has no other right than that of passage. *Johnson* v. *May*, 189 App. Div. 196.

These considerations lead to the conclusion that the plaintiff is entitled to the injunctive relief that it seeks. Since, however, the defendants are not willful trespassers but believed that there would be no objection on the part of the plaintiff to their erecting the booth, no costs are awarded against them.

Appropriate findings in accordance herewith may be presented for signature.

Judgment accordingly.