L. Barron Hill, J.
The controversy before the court is contemporary, but the issues are of ancient and regal vintage. The plaintiff is a taxpayer of the Town of Islip and brings suit to annul a lease between the defendants, Town of Islip and Shellfish, Inc., which covers 338.5 acres of land under the waters of the Great South Bay, and grants the lessee the use of the bay bottom for planting and cultivating shellfish.
The town is charged, and this is the crux of the complaint, with failing to comply with section 64 (subd. 2) and section 198 *820 (subd. 12) of the Town Law. These sections generally require a public hearing or referendum before a town may convey any of its realty, and the town admittedly has not complied with this procedure. However, the codefendants, who bring this motion for summary judgment, have joined in an answer affirmatively pleading that the leased property is held by the town in a proprietary or private capacity and, therefore, not subject to the afore-mentioned provisions of the Town Law. This rationale of municipal property ownership has been adopted by our courts. In Town of Islip v. Estates of Havemeyer Point (224 N. Y. 449) the Court of Appeals discussed the concept of ownership and power of a township when dealing with lands that devolved under colonial patents, and there stated: 1 ‘ These lands were held by the town in private as distinguished from public ownership. It needed no legislative authority to enable it to deal with them as its interests might require. It could devote them to the use of the inhabitants in common. It could convey them or lease them. ’ ’
It must, therefore, be determined whether these lands under water are held by the town in a private capacity. To this end the defendants have submitted what amounts to an annotated title report commencing with purchases from the Indians “ as of their aboriginal right ”. There has not, however, been established a definite link showing the bay bottom in question within the bounds of any colonial patent later ceded to the Town of Islip. In fact, this historic narrative reveals principally, the many early disputes concerning the upland and islands within the bay, which were conveyed by various patents as separate parcels exclusive of the bay itself. Reference to the source cases indicate only the difficulties which surrounded the attempts to accurately define patent boundaries in this area (Nicoll v. Trustees of Huntington, 1 Johns. Ch. 166).
Nevertheless, on August 26, 1930, the State of New York granted letters Patent to the Town of Islip conveying lands under water in the town lying westerly of the Brookhaven Patent. In addition, the grant contained the following clause: “ On the further condition that the Town Board of the Town of Islip may lease for purposes of shellfishing on such lands as it deems just, any of such lands as shall not in any way interfere with the enjoyment of the adjoining uplands by the owner of said uplands. No such lease shall be made within one thousand feet of the adjoining upland except to the owner of the adjoining upland”. This conveyance from the State as sovereign proprietor is prima facie evidence of title (Clark v. Holdridge, 12 App. Div. 613). Although the defendants have failed to *821 exclude the possibility that the bay bottom in question was included in one of the several colonial patents, the validity of the State grant cannot be attacked collaterally (Blakslee Mfg. Co. v. Blakslee’s Sons Iron Works, 129 N. Y. 155). Further, the plaintiff has assumed title to be in the Town of Islip, and as a practical matter, he might have no complaint as a taxpayer if the town received revenues for land it never owned.
Because the property in question is land under water of “ an arm of the sea ”, and not merely proprietory upland, it is necessary to explore the unique rights of the public that are involved. It was known at common law ‘ ‘ that the king is the universal lord and original proprietor of all the lands in his kingdom, and that no man doth or can possess any part of it, but what has mediately or immediately been derived as a gift from him to be held upon feudal services ” (2 Blackstone’s Comm. p. 52). In days long gone by it was argued that the Magna Charta restricted the Crown’s right to make grants of land under water, and that the right of fishery belonged to the whole people. In Trustees of Brookhaven v. Strong (60 N. Y. 56) the authorities are collated and the question put to rest. It was there determined that the Barons on the meadows of Runnymede in 1215, wrested from King John only his power to grant exclusive rights of fishery disconnected with the grant of the soil under water; or as was stated in Rogers v. Jones (1 Wend. 237, 258): “ The object of the statute seems to have been to prevent the king from putting any rivers in defens for his recreation, except such as had been put in defence in the time of Henry II., his grandfather, and was intended to prohibit the exercise of his ancient prerogative for his own personal pleasure, but not applying to the owners of the banks of rivers or any other individuals. Notwithstanding this statute, the king, although restricted as to the occupancy of rivers for his pleasure, was at liberty to grant the land, under the rivers and navigable waters in his realm, at his will and pleasure.” (See, also, 3 Kent’s Comm. p. 409.)
The title to the lands under water which were vested in the Crown passed to the States after the Revolution. The People of this State, as sovereigns, through their Legislature took the royal title and the prerogatives formerly held by the King and Parliament (People v. New York & Staten Is. Ferry Co., 68 N. Y. 71; Langdon v. Mayor of the City of N. Y., 93 N. Y. 129; N. Y. Const., art. I, § 10; Public Lands Law, § 4). The Legislature as the voice of the electorate was, however, limited in making grants in derogation of the rights of the public, that is in abridgement of the jus publicum. Consequently, the former power of the Crown, to grant the oil under navigable waters and with it *822 the exclusive right of fishery, vanished. (N. Y. Const. [1894], art. I, § 17 [now § 15]; Slingerland v. International Contr. Co., 43 App. Div. 215, affd. 169 N. Y. 60; Rockefeller v. Lamora, 85 App. Div. 254.) However, the right to plant, grow and exclusively own shellfish in navigable waters was never considered an appropriation of the right of common fishery. Cultivated shellfish are not considered ferae naturae as fish swimming at large (Vroom v. Tilly, 184 N. Y. 168; Davis v. Davis, 72 App. Div. 593; Fleet v. Hegeman, 14 Wend. 42; Post v. Kreischer, 103 N. Y. 110). Hence, there is no inherent disability in the State of New York to convey the bay bottom and the right to lease it for purposes of shellfishing to the Town of Islip. The unique and historical rights of fishery and navigation belonging to the public are not affected. The Legislature exercised its right to appropriate lands for private purposes pursuant to the Constitution which requires the assent of two thirds of the Legislature (N. Y. Const., art. III, § 20; L. 1929, ch. 206; L. 1930, ch. 535). The land is proprietary in nature and does not change character because the Patent was granted by the State rather than the King or a colonial governor.
In brief, it may be stated that in some measure ancient prerogatives of the Crown still lurk below the waters of the bay, and may be utilized by the State as representative of its sovereigns under constitutional safeguard.
Accordingly, the motion for summary judgment is granted. Settle order.